In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4213

MICHIGAN SOUTHERN RAILROAD COMPANY,
f/k/a Wabash & Western Railway Co.,

Plaintiff-Appellant,

v.

CITY OF KENDALLVILLE, INDIANA,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:98CV-50--William C. Lee, Chief Judge.

Argued May 11, 2001--Decided June 6, 2001


  Before FLAUM, Chief Judge, and BAUER and
EVANS, Circuit Judges.

  EVANS, Circuit Judge.  The City of
Kendallville, a fairly small (2000
population: 9,616) town tucked in the
northeast corner of Indiana, wants the
Michigan Southern Railroad Company to cut
the weeds on its right-of-way. The
district court ordered the railroad to
cut some of the weeds, and it appeals.

  Kendallville has a municipal ordinance
regarding weed control. In its attempt to
enforce the ordinance against the
railroad on its 100-foot-wide right-of-
way which runs through the city, it filed
this action for a declaratory judgment
and a permanent injunction. The district
judge held that, because of the existence
of a federal regulation regarding
vegetation control on railroad rights-of-
way, the Kendallville ordinance was
preempted on the part of the right-of-way
which was, in the words of the
regulation, "immediately adjacent" to the
tracks, but not as to the remainder. The
parties stipulated that "immediately
adjacent" meant 15 feet from the center
of any track. The railroad contends that
the ordinance is preempted in its
entirety by the Federal Railroad Safety
Act (FRSA), 49 U.S.C. sec. 21101 et seq.,
and cannot be enforced.

The Supremacy Clause to the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land." Art. VI, cl.2. The clause is well-understood to provide Congress with the power to preempt state law. Preemption occurs when Congress expresses a clear intent to occupy a particular field. When Congress legislates comprehensively, and within the scope of its constitutional authority, its enactments control. Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355 (1986). Nevertheless, we are to analyze preemption issues cautiously in the "interest of avoiding unintended encroachment on the authority of states" in areas traditionally governed by state law. CSX Transp., Inc. v. Easterwood, 507 U.S. 658 (1993).

The FRSA was enacted under Congress' constitutional authority to regulate interstate commerce with the intent of providing uniform national regulation of railroad operations. In the FRSA, the Secretary of Transportation was given the authority to "proscribe regulations and issue orders for every area of railroad safety." 49 U.S.C. sec. 20103(a). Regulations are promulgated and enforced by the Federal Railroad Administration. Burlington N. & Santa Fe Ry. v. Doyle, 186 F.3d 790 (7th Cir. 1999).

Congress expressly intended that the FRSA would preempt all railroad safety legislation with specific exceptions set out in what is called the state participation exemption. Exempted are state laws, regulations, or orders which govern an area in which the Secretary has not issued regulations or orders or state laws which are more strict than federal regulations when stricter regulation is necessary to address a specifically local problem. However, the exempted state regulations, laws, or orders must not unreasonably burden interstate commerce. 49 U.S.C. sec. 20106.

A specific federal regulation governs vegetation on railroad property. 49 C.F.R. sec. 213.37 provides:

Vegetation on railroad property which is on or immediately adjacent to roadbed must be controlled so that it does not--

(a) Become a fire hazard to track-carrying structures;

(b) Obstruct visibility of railroad signs and signs and signals:

(1) Along the right-of-way, and

(2) At highway-rail crossings; (This paragraph (b)(2) is applicable September 21, 1999.)

(c) Interfere with railroad employees performing normal trackside duties;

(d) Prevent proper functioning of signal and communication lines; or

(e) Prevent railroad employees from visually inspecting moving equipment from their normal duty stations.

The issue before us, then, is whether this regulation or any other aspect of the FRSA preempts Kendallville's ordinance. One avenue by which Kendallville might attempt to avoid preemption is the state participation exemption in sec. 20106. However, Kendallville does not press this point, perhaps noting that we are unlikely to apply the state participation exception to a municipal ordinance. See, e.g., CSX Transp., Inc. v. City of Plymouth, Michigan, 86 F.3d 626, 628 (6th Cir. 1996), in which the court found that as "Plymouth is not a 'State,' the challenged Plymouth ordinance is not within the FRSA's preemption clause exceptions."

Rather, Kendallville's argument is along the following lines. Its ordinance is not a safety ordinance. For that reason, it does not matter that as a municipality, it does not qualify for the state participation exemption under the FRSA. Kendallville says simply that its ordinance is not preempted in the first instance; therefore, there is no need to rely on an exemption. The argument is that because the federal vegetation regulation, sec. 213.37, applies only to the area "immediately adjacent" to the tracks, not to the entire right-of-way, preemption would apply only to that area "immediately adjacent" to the tracks-- which in this case is stipulated to be 15 feet from the center of the tracks. Because there is no federal regulation

which governs the remainder of the right-of-way, Kendallville feels free to enforce its ordinance on that portion of the land. Perhaps the argument has at least superficial appeal, but, nevertheless, we cannot find that local municipalities can enforce local weed control ordinances on railroad rights-of-way.

Even though the city does not argue that its ordinance is a safety provision--in fact argues that it is not--the railroad's argument that the ordinance has an impact on safety is not entirely farfetched. The railroad says that if it were required to maintain its right-of-way to "front yard" standards set out in the ordinance, it would be inviting to trespassers--pedestrians, bicycles, motorcycles, snowmobiles--all of which present safety problems for the railroad. In other words, having the right-of-way a little less than inviting is a good thing. Viewed from that angle, the ordinance could affect safety. In City of Plymouth the court rejected an argument that an ordinance prohibiting trains from obstructing a crossing for longer than 5 minutes was a measure designed to promote the general welfare of its residents and was not a safety measure. The court found that the ordinance was, in fact, related to railroad safety. We think the existence of a vegetation control regulation--that is, sec. 213.37--is solid evidence that the Secretary thinks vegetation control is a safety issue. See also, e.g., Missouri Pacific R. v. Railroad Comm'n of Texas, 833 F.2d 570 (5th Cir. 1987). We do not disagree.

Congress' occupation of the field of railroad regulation is to ensure uniform national standards. Specifically, 49 U.S.C. sec. 20106 states that "[l]aws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable." While sec. 20106 allows the states some leeway to impose certain safety requirements on the railroads, even that leeway is limited. Were we considering a state law regarding vegetation control, in light of sec. 213.37, we would need to consider whether the state law met the exemptions set out in sec. 20106, as was the issue before the court in Missouri Pacific, for instance. We cannot imagine that Congress intended to give local municipalities

greater rights than the states.

The Kendallville ordinance affirmatively violates a requirement set out in sec. 20106, which as we said requires that the state law, regulation, or order not place an unreasonable burden on interstate commerce. To uphold enforcement of the ordinance would do just that. Even putting sec. 20106 aside, upholding municipal regulation of railroad right-of-way would completely undermine the goal of uniform national regulation. Rather than 50 possible regulatory schemes, there could be thousands, which would be an obvious unreasonable burden on interstate commerce.

In sum, we think it unlikely that a municipal ordinance qualifies for the exemptions set out in sec. 20106. The bottom line is, however, that this municipal ordinance cannot be upheld under any rationale because it poses an unreasonable burden on interstate commerce. The decision of the district court is REVERSED and the case REMANDED for the entry of judgment in favor of the railroad.