# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2016-NMSC-032**

**Filing Date: August 18, 2016**

**Docket No. S-1-SC-35198**

**LENARD NOICE, II**
**as Personal Representative for LENARD E. NOICE,**

      **Plaintiff-Respondent,**

**v.**

**BNSF RAILWAY COMPANY,**

      **Defendant-Petitioner.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Sarah Singleton, District Judge**

Atkinson, Baker & Rodriguez, P.C.
Clifford K. Atkinson
Justin Duke Rodriguez
John S. Thal
Ryan T. Jerman
Albuquerque, NM

for Petitioner

Long, Komer & Associates, P.A.
Mark E. Komer
Santa Fe, NM

for Respondent

Modrall Sperling
John R. Cooney
Sarah M. Stevenson
Albuquerque, NM

Association of American Railroads
Daniel Saphire
Washington, DC

for Amicus Curiae Association of American Railroads

**OPINION**

**NAKAMURA, Justice.**

**{1}**     Lenard E. Noice (Noice) worked as a conductor for Petitioner BNSF Railway Company (BNSF).  He fell from a BNSF train that was moving at speed and perished.  The Respondent, Lenard Noice II, acting as personal representative for Noice (the Estate), filed a wrongful death action against BNSF under the Federal Employee's Liability Act (FELA), 45 U.S.C. §§ 51-60 (2012), asserting, among other claims, that BNSF negligently permitted the train from which Noice fell to operate at an excessive speed.  The undisputed facts established that the train from which Noice fell never exceeded the speed limit for the class of track upon which it was operating.  BNSF moved for summary judgment arguing that the Estate's FELA excessive-speed claim was precluded by the Federal Railroad Safety Act (FRSA), 49 U.S.C. §§ 20101-20168 (2012), and the track-speed regulations promulgated under FRSA and codified at 49 C.F.R. § 213.9(a) (1992).  The district court accepted this argument and dismissed the Estate's FELA claim.  The Court of Appeals reversed, concluding that FRSA does not preclude a FELA excessive-speed claim. *Noice v. BNSF Ry. Co.*, 2015-NMCA-054, ¶ 24, 348 P.3d 1043, *cert. granted*, 2015-NMCERT-005 (No. 35,198, May 11, 2015).  Because FRSA contains no provision expressly precluding the Estate's FELA excessive-speed claim and because permitting the Estate's FELA claim to proceed furthers the purposes of both statutes, we affirm the Court of Appeals.

**I.     BACKGROUND**

**{2}**     In January of 2009, Noice was conducting a BNSF train traveling from Clovis to Belen.  The train was pulled by four locomotives.  At some point around 6:00 p.m., Noice ceded operation of the train to his assistant, John Royal.  Noice exited the lead locomotive and proceeded rearwards.   Before leaving the lead locomotive, however, Noice instructed Royal to "start pulling on the train."  Royal understood this as an instruction to accelerate.

**{3}**     At the time Noice left the lead locomotive, the train was traveling at approximately 11 mph, or, as Royal put it, "very slowly."  After Noice departed, Royal set the throttle to the maximum position.  The train approached 55 mph—the speed limit assigned to the class of track upon which the train was traveling—but never exceeded this speed.

**{4}**     How, exactly, Noice fell from the train is unclear.  Royal observed Noice proceeding rearwards toward the second locomotive and saw him enter its cabin.  The train neared a

2

crossing that required Royal to blow the train's horn. Royal looked back again to ensure that Noice was not returning to the lead locomotive and, thus, near the horn, but Royal could not see Noice. Royal attempted to signal Noice by use of an attendant bell. Noice did not respond and Royal brought the train to a stop. Royal searched the three trailing locomotives, could not locate Noice, and reported to dispatch that Noice was missing. Noice's body was discovered a short time later near the tracks in the direction from which Noice and Royal had traveled.

**{5}** The Estate's complaint for wrongful death asserts five counts. We are concerned here only with count one, the Estate's FELA negligence claim. The district court construed count one as claiming three types of possible negligence: "(1) defective equipment, (2) failure by Noice's co-employee Royal to engage in a job briefing, and (3) Royal's increase of speed to 55 [mph] while Noice was walking on the exterior of the locomotive on a catwalk." The court concluded that there were insufficient facts to support theories one and two. As to the third theory, the court understood the Estate to be claiming that the increase in speed created rough riding conditions on locomotive two and subjected Noice to 55 mph winds while outside the train. A video in evidence, the court noted, shows Noice walking on the second locomotive and experiencing the rough ride.

**{6}** Although the court found no "direct evidence that the speed of the train caused Noice to fall from" it, the court nevertheless determined that, because juries are permitted wider latitude to draw inferences under FELA, the Estate's excessive-speed claim created a triable issue of fact. "[I]t is logical," the court found, "that a bucking locomotive combined with a heading wind of 55 [mph] caused by an increase in speed could cause a person to fall . . . ."

**{7}** Yet, the court concluded that the Estate's excessive-speed claim could not proceed. The court determined that an excessive-speed claim under FELA is "pre-empted so long as the train is within the regulated speed limit," and the parties agreed that the train from which Noice fell never exceeded the permissible track speed. Accordingly, the court granted summary judgment to BNSF on the Estate's FELA claim, and subsequently dismissed the Estate's complaint in its entirety.

**{8}** The Estate appealed the court's dismissal of its FELA negligence claim and challenged the court's "rejection of each theory of negligence." *Noice*, 2015-NMCA-054, ¶ 8. The Court of Appeals concluded that the district court properly rejected the Estate's non-speed-based theories. *Id.* ¶¶ 20-23. As to the excessive-speed claim, however, the Court determined that the district court erred in concluding that FRSA "pre-empted" the claim. *Id.* ¶¶ 1, 13, 24. The Court determined that the doctrine of pre-emption was inapplicable. *Id.* ¶ 13. Rather, the issue presented was whether one federal statute, FRSA, precluded an action under another federal statute, FELA. *Id.* ¶ 8. The Court held that FRSA did not preclude the Estate's FELA excessive-speed claim. *Id.* ¶ 24.

**{9}** BNSF filed a petition for a writ of certiorari with this Court. We granted the petition,

3

exercising our jurisdiction under Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, Section 34-5-14(B) (1972), to consider whether FRSA precludes the Estate's FELA excessive-speed claim.

## II.      DISCUSSION

### A.      Standard of Review

{10}     We review de novo the district court's decision on a motion for summary judgment. *Smith v. Durden*, 2012-NMSC-010, ¶ 5, 276 P.3d 943. "Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Id.* (omission in original) (quoting Rule 1-056 NMRA). Whether FRSA precludes the Estate's FELA excessive-speed claim is a pure question of law that we review de novo. *See POM Wonderful LLC v. Coca-Cola Co.*, ___ U.S. ____, ____, 134 S. Ct. 2228, 2236 (2014) (observing that preclusion analysis is driven by the established principles of statutory interpretation); *Bd. of Comm'rs of Rio Arriba Cnty. v. Greacen*, 2000-NMSC-016, ¶ 4, 129 N.M. 177, 3 P.3d 672 (holding that issues of statutory construction are pure questions of law subject to de novo review).

### B.      Preclusion Analysis

{11}     We begin by noting that this is not a pre-emption case. "In pre-emption cases, the question is whether state law is pre-empted by a federal statute, or in some instances, a federal agency action." *POM Wonderful*, ___ U.S. at ____, 134 S. Ct. at 2236. The pre-emption doctrine "flows from the Constitution's Supremacy Clause, U.S. Const., Art. VI, cl. 2, which invalidates state laws that interfere with, or are contrary to, federal law. The doctrine is inapplicable to a potential conflict between two federal statutes." *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 86 (2d Cir. 2006) (internal quotation marks and citation omitted). This is because "the state-federal balance does not frame the inquiry." *POM Wonderful*, ___ U.S. at ____, 134 S. Ct. at 2236.

{12}     Rather, because this case concerns two federal acts, it presents an issue of preclusion, not pre-emption. The principles that govern in the preclusion context are well established. "When there are two acts upon the same subject, the rule is to give effect to both if possible." *United States v. Borden Co.*, 308 U.S. 188, 198 (1939). "[C]ourts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). This is so even where redundancies across statutes manifest, events that are hardly unusual. *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992).

{13}     A later-enacted statute can operate to repeal an earlier statutory provision, but "[i]n the absence of some affirmative showing of an intention to repeal, the only permissible

4

justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton*, 417 U.S. at 550. Repeals by implication are rare, *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 142 (2001), and should be found only if necessary to make the later-enacted law work, and even then only to the minimum extent necessary. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976).

{14}    In *Pom Wonderful*, a recent preclusion case, the United States Supreme Court clarified that these well-established principles necessitate a two-part inquiry. First, a court must look to the express language of the statutory provisions and determine whether Congress expressly intended preclusion. *Pom Wonderful*, ___ U.S. at ____, 134 S. Ct. at 2237. If no express provision is found, courts must then examine the structure and purposes of the two statutes to determine whether they are complementary or irreconcilable. *Id.* at ____, 134 S. Ct. at 2238-39. "When two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *Id.* at ____, 134 S. Ct. at 2238. We begin our analysis by examining the two statutes at issue in this case, FELA and FRSA. *See id.* at ____, 134 S. Ct. at 2233 (instructing that a proper beginning point for preclusion analysis "is a description of the statutes").

## C.    FELA and FRSA

{15}    Enacted in 1908, FELA provides the exclusive remedy for railroad employees injured as a result of their employers' negligence. *Wabash R.R. Co. v. Hayes*, 234 U.S. 86, 89 (1914); *Janelle v. Seaboard Coast Line R.R. Co.*, 524 F.2d 1259, 1261 (5th Cir. 1975) ("[D]amages for the death or injury of a railroad employee engaged in interstate commerce, allegedly caused by the negligence of the railroad, are recoverable exclusively from the railroad under FELA, and may not be recovered under state law."). FELA provides railroad employees with a federal cause of action for injuries "resulting in whole or in part from the negligence" of the railroad. 45 U.S.C. § 51. This private right of action created by FELA marked a crucial turning point in congressional oversight of the railroad industry. *See generally Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) ("[W]hen Congress enacted FELA in 1908, its attention was focused primarily upon injuries and death resulting from accidents on interstate railroads." (internal quotation marks and citation omitted)).

{16}    "[I]t is clear that the general congressional intent [behind FELA] was to provide liberal recovery for injured workers . . . ." *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432 (1958). "The railroad business was exceptionally hazardous at the dawn of the twentieth century." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011). "Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year, Congress crafted a federal remedy that shifted part of the human overhead of doing business from employees to their employers." *Gottshall*, 512 U.S. at 542 (internal quotation marks and citation omitted).

**{17}** "[I]t is also clear that Congress intended the creation of no static remedy, but one which would be developed and enlarged to meet changing conditions and changing concepts of [the railroad] industry's duty toward its workers." *Kernan*, 355 U.S. at 432. As such, courts must liberally construe FELA "to further Congress' remedial goal." *Gottshall*, 512 U.S. at 543. For example, courts have held that FELA creates a relaxed standard of causation. *McBride*, 564 U.S. at 692.

**{18}** Congress intended FELA to be applied uniformly throughout the nation. *Dice v. Akron, C. & Y. R. Co.*, 342 U.S. 359, 361 (1952). "What constitutes negligence for the [FELA] statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs." *Urie v. Thompson*, 337 U.S. 163, 174 (1949). State courts have concurrent jurisdiction over FELA actions, 45 U.S.C. § 56, and railroad defendants may not "defeat a FELA plaintiff's choice of a state forum by removing the action to federal court." *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1561 (7th Cir. 1989).

**{19}** FRSA was enacted in 1970 to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. FRSA grants the Secretary of Transportation (the Secretary) authority to "prescribe regulations and issue orders for every area of railroad safety . . . ." 49 U.S.C. § 20103(a). The Secretary has delegated to the Federal Railroad Administration (FRA) regulatory authority over railroad safety. *Union Pac. R.R. Co. v. Cal. Pub. Utilities Comm'n*, 346 F.3d 851, 858 n.8 (9th Cir. 2003); *see also Mich. S. R.R. Co. v. City of Kendallville*, 251 F.3d 1152, 1154 (7th Cir. 2001) ("In the FRSA, the Secretary . . . was given the authority to proscribe regulations and issue orders for every area of railroad safety. Regulations are promulgated and enforced by the [FRA]." (internal quotation marks and citations omitted)). "Federal regulations issued by the Secretary pursuant to FRSA and codified at 49 CFR § 213.9(a) (1992) set maximum allowable operating speeds for all freight and passenger trains for each class of track on which they travel." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 673 (1993). "The different classes of track are in turn defined by, *inter alia*, their gage, alignment, curvature, surface uniformity, and the number of crossties per length of track." *Id.*

**{20}** FRSA includes a pre-emption provision which states that the "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). FRSA further provides that a state "may adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). The Supreme Court has construed these provisions as pre-empting state law claims, statutes, and regulations to the extent they intrude into a subject matter covered by federal railroad-safety regulations. *See Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 352 (2000) (citing *Easterwood*, 507 U.S. at 664).

**{21}**     FRSA does not create a private right of action.  "[E]nforcement powers under the [FRSA] are vested solely with the Secretary . . . and, under certain conditions, the States or the Attorney General."  *Henderson v. Nat'l R.R. Passenger Corp.*, 87 F. Supp. 3d 610, 613 (S.D.N.Y. 2015); *see also Abate v. S. Pac. Transp. Co.*, 928 F.2d 167, 169-70 (5th Cir.1991).

**D.     FRSA Does Not Expressly Preclude the Estate's FELA Excessive-Speed Claim**

**{22}**     FRSA does not expressly preclude FELA excessive-speed claims.  In fact, FRSA does not mention FELA.  The absence of any express statement in FRSA barring FELA claims is significant.  FELA was enacted almost 60 years before FRSA, and if Congress intended FRSA to preclude FELA claims, Congress presumably would have said so.  *See Henderson*, 87 F. Supp. 3d. at 617 ("If Congress had intended that the FRSA both preclude covered FELA claims and preempt covered state law claims, it would have said so."); *see also POM Wonderful*, ___ U.S. at ____,  134 S.Ct. at 2237 (concluding that, where one federal statute predated another by many years, the absence of an express statement in the later-enacted statute that claims brought under the earlier-enacted statute are precluded is strong evidence that Congress did not intend preclusion); *cf. Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts.").  Moreover, because Congress included in FRSA an express provision pre-empting only state law and state-law claims, we infer that Congress did not intend FRSA to preclude FELA claims or other federal causes of action.  *See POM Wonderful*,  ___ U.S. at ____,  134 S. Ct. at 2238 (concluding that Congress's decision to include in a federal statute a state law pre-emption provision suggests that Congress did not intend that statute to preclude a cause of action under another federal statute).

**{23}**     Because we find no express provision within FRSA precluding a FELA claim for excessive speed, we turn to the structure and purposes of the two statutes to determine whether, as BNSF contends in its Brief in Chief, permitting the Estate's FELA excessive-speed claim would "upend" FRSA and "eviscerate the uniformity and regulatory certainty that Congress intended in enacting FRSA."

**E.     Allowing FELA Excessive-Speed Claims Does Not Create an Irreconcilable Conflict with FRSA**

**{24}**     BNSF contends that, at its core, FRSA is concerned with national uniformity in railroad safety standards.  The track-speed regulations promulgated by the FRA under the authority granted to it by FRSA are, BNSF claims, intended to be nationally uniform standards. BNSF argues that permitting the Estate's FELA excessive-speed claim to proceed would undermine the uniformity of these standards and derail FRSA's core purpose. Accordingly, BNSF insists that the Estate's FELA claim must be precluded.  BNSF relies on several United States Courts of Appeals decisions that have already embraced this reasoning and conclusion and asks us to follow suit.  *E.g., Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439,

442-44 (5th Cir. 2001); *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 775-76 (7th Cir. 2000). For the reasons that follow, we decline to follow *Waymire* and its progeny. These federal appellate decisions are founded on *Easterwood*, a seminal United States Supreme Court decision interpreting the pre-emptive (not preclusive) effect of FRSA and the FRA track-speed regulations. And, thus, it is with *Easterwood* that our analysis must begin.

**{25}** Thomas Easterwood was killed when a CSX train collided with the truck he was driving. *Easterwood*, 507 U.S. at 661. His widow asserted a negligence claim against CSX under state law alleging, among other things, that the train that struck and killed Mr. Easterwood was traveling at an excessive speed. *Id.* The Supreme Court observed that, under FRSA's express pre-emption provision, federal regulations may pre-empt any state "law, rule, regulation, order, or standard relating to railroad safety," including any duty imposed on railroads by state common law, so long as the federal regulations cover the field, i.e., "substantially subsume the subject matter of the relevant state law." *Id.* at 664. The Court determined that the FRA regulations setting maximum train speeds for different classes of track codified at 49 C.F.R. § 213.9(a) cover the subject matter of train speed with respect to track conditions. *Easterwood*, 507 U.S. at 675. The Court explained that,

> [o]n their face, the provisions of § 213.9(a) address only the maximum speeds at which trains are permitted to travel given the nature of the track on which they operate. Nevertheless, related safety regulations adopted by the Secretary reveal that the limits were adopted only after the hazards posed by track conditions were taken into account. Understood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort that [Mr. Easterwood's widow] seeks to impose on [CSX].

*Id.* at 674. Accordingly, the Supreme Court held that the state-tort excessive-speed claim was pre-empted. *Id.* at 676. Significantly, we note that the Supreme Court expressly clarified that it did not address the question of FRSA's pre-emptive effect on suits for breach of other tort duties—such as the duty to slow or stop a train to avoid a "specific, individual hazard." *Id.* at 675 n.15.

**{26}** Like *Easterwood*, *Waymire* also involved a collision between a train and motor vehicle. *Waymire*, 218 F.3d at 774. The railroad worker conducting the train was injured and sued his railroad employer under FELA, claiming that his employer was negligent for permitting the train to travel at an unsafe speed. *Id.* And as in *Easterwood*, the train never exceeded the maximum permissible track speed established by the FRA regulations. *Waymire*, 218 F.3d at 774.

**{27}** The *Waymire* court recognized that *Easterwood* did not control the issue before it and that pre-emption analysis was inapplicable. *Waymire*, 218 F.3d at 775-76. The issue before the court concerned the interaction of two federal statutes, not the interplay of state and

federal law. *Id.* at 775. Nevertheless, the *Waymire* court determined that *Easterwood*'s reasoning provided the foundation for resolution of the case. *Waymire*, 218 F.3d at 775. The *Waymire* court emphasized both *Easterwood*'s conclusion that the FRA regulations cover the subject matter of train speed, *Waymire*, 218 F.3d at 775-76, and *Easterwood*'s determination that the federal track-speed regulations serve not only as ceilings on the maximum legally permissible train speed, but also prohibit the imposition of liability under state law even where conditions would reasonably call for lower speeds. *Waymire*, 218 F.3d at 776. The *Waymire* court concluded that "in order to uphold FRSA's goal of uniformity we must strike the same result." *Id.* The court explained that,

> [i]n *Easterwood*, the train was operating within the FRSA prescribed 60 miles per hour speed limit, as was [the] train in this case. It would thus seem absurd to reach a contrary conclusion in this case when the operation of both trains was identical and when the Supreme Court has already found that the conduct is not culpable negligence.

*Waymire*, 218 F.3d at 776. The court added that "[t]o treat cases brought under federal law differently from cases brought under state law would defeat FRSA's goal of uniformity[,]" *Id.* at 777, and illustrated this point with a hypothetical. Imagining a collision between a motorist and train where both driver and conductor are injured, the court could see no defensible justification for barring the motorist's state-tort negligence suit on pre-emption grounds while simultaneously permitting the conductor to proceed with his FELA negligence action. *Id.* "We do not believe," the court stated, that this result is "envisioned by the statute or by the Supreme Court's decisions." *Id.* Accordingly, the *Waymire* court held that the railroad worker's FELA excessive-speed claim was precluded by FRSA. *Id.* at 777. *See also Lane*, 241 F.3d at 442-44 (reaching the same holding for the same reasons under nearly identical facts); *cf. Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426 (6th Cir. 2009) (concluding that FRSA, and regulations promulgated under FRSA regarding track ballast, precluded two railroad workers from asserting FELA negligence claims for injuries sustained as a result of having to walk continuously on oversized track ballast). *Waymire* and its progeny are unpersuasive for a number of reasons, and BNSF's reliance on these cases is misplaced.

{28}     First, the United States Supreme Court has routinely rejected attempts to curtail FELA by inference. *See Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 558-67 (1987) (agreeing that the Railway Labor Act (RLA), 45 U.S.C. §§ 151-165 (2012), provides a comprehensive framework for resolution of labor disputes in the railroad industry, but nevertheless concluding that FELA was enacted "to serve as the statutory basis for the award of damages to employees injured through an employer's or co-worker's negligence," and concluding that, "absent an intolerable conflict between the two statutes," the RLA shall not be interpreted "as repealing any part of the FELA"); *Urie*, 337 U.S. at 165-95 (reversing the Missouri Supreme Court's decision that injuries arising from an alleged violation of the Boiler Inspection Act (BIA), Act of Feb. 17, 1911, ch. 103, § 2, 36 Stat. 913-14, (repealed

9

1994) (current version at 49 U.S.C. §§ 20701-20703 (2012)), were not compensable under FELA because the BIA is supplemental to FELA and was intended to facilitate, not restrict, recovery under FELA, and further concluding that any reading of the interplay of these statutes that would restrict FELA by inference would be error). BNSF fails to acknowledge this point, and *Waymire* and its progeny diverge from this tradition.

**{29}** Second, BNSF's contention that *Waymire* and its progeny control the issue presented in this case overlooks that, in *Easterwood*, the Supreme Court expressly declined to address or decide whether FRSA pre-empts a state-law claim for breach of the duty to slow or stop a train to "avoid a specific, individual hazard." *Easterwood*, 507 U.S. at 675 n.15. To be sure, this is not a pre-emption case, and the Estate's sole remedy is FELA. Nevertheless, footnote 15 in *Easterwood* is significant in light of the Seventh Circuit's reasoning in *Waymire*: because FRSA pre-empts state-law excessive-speed claims, FRSA must also preclude FELA excessive-speed claims. This logic must fail if the underlying FELA claim is premised on the assertion that a specific, individual hazard warranted reduced speed. The claim would not be subject to pre-emption and, thus, not precluded.

**{30}** Lower federal and state courts "have not been uniform in fleshing out the content of the specific, individual hazard concept." *Myers v. Missouri Pac. R.R. Co.*, 2002 OK 60, ¶ 27, 52 P.3d 1014.

> Generally, courts considering this issue have ruled that a "specific individual hazard" must be a discrete and truly local hazard, such as a child standing on the railway. They must be aberrations which the Secretary could not have practically considered when determining train speed limits under the FRSA. More precisely phrased, the "local hazard" cannot be statewide in character and cannot be capable of being adequately encompassed within uniform, national standards.

*O'Bannon v. Union Pac. R.R. Co.*, 960 F. Supp. 1411, 1420-21 (W.D. Mo. 1997) (footnote and citations omitted). *Compare Anderson v. Wis. Cent. Transp. Co.*, 327 F. Supp. 2d 969, 978 (E.D. Wis. 2004) ("A specific individual hazard is a unique occurrence which could cause an accident to be imminent rather than a generally dangerous condition.") *with Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 640 (5th Cir. 2005) ("A condition that can be or is present at many, or most sites cannot be a specific, individual hazard."). In *Bakhuyzen v. Nat'l Rail Passenger Corp.*, 20 F. Supp. 2d 1113, 1118 (W.D. Mich. 1996), a case we find instructive, the court held that poor visibility due to snowy weather conditions posed a specific, individual hazard imputing to the train conductor a duty, not pre-empted by FRSA, to operate the train at a speed no greater than would be prudent given the conditions. In reaching this conclusion, the court observed that "[m]aximum train speeds, like automobile speed limits, do not remove from the driver the obligation to exercise due care when and if the circumstances . . . make operation at the maximum speed careless." *Id.* This reasoning is sound.

**{31}** In the present case, the district court understood the Estate's FELA excessive-speed claim as asserting that BNSF was negligent in permitting Noice's train to travel at or near 55 mph because, at the time the train was permitted to travel at this speed, Noice was outside the lead locomotive cabin, navigating the catwalk of a bucking locomotive, and exposed to high winds and other external forces. In other words, Noice's precarious circumstances constituted a specific, individual hazard that imputed to BNSF a duty to ensure the train traveled at a rate of speed no faster than would be prudent to ensure Noice's safety. The Estate's claim would not be pre-empted if brought as a state-tort action; thus, there is no reason to accept *Waymire's* conclusion that *Easterwood* leads inevitably to the conclusion that excessive-speed claims like the Estate's must be precluded.

**{32}** Third, *Waymire* and its progeny improperly inject concerns about the supremacy clause, which underlies the federal pre-emption doctrine, into the preclusion context. *Waymire* does so by giving undue weight to *Easterwood*'s conclusion that the FRA regulations cover the field of track speed. But this determination in *Easterwood* merely resolved that a particular kind of state-law excessive-speed claim could not exist in the covered field; the determination is inapposite as to whether FELA can co-exist alongside FRSA. There is no meaningful consideration in *Waymire* and its progeny given to this question, i.e., whether the two statutes may work together to further railroad safety. Rather, both cases conclude that the Supreme Court's pre-emption holding in *Easterwood* leads inescapably to the conclusion that FRSA precludes FELA excessive-speed claims. But this does not follow; *Waymire* and its progeny conflate separate legal doctrines. *See POM Wonderful*, ___ U.S. at ____, 134 S. Ct. at 2238 ("Pre-emption of some state requirements does not suggest an intent to preclude federal claims.").

**{33}** Fourth, it is an established axiom in the preclusion context that courts are not free to pick and choose among federal enactments. *See Morton*, 417 U.S. at 551. Yet *Waymire* and its progeny do just this. These decisions unnecessarily overemphasize the purposes of FRSA at the expense of the equally valid purposes of FELA, and they ignore the distinct remedial purposes of FELA. Indeed, the "absurdity" *Waymire* perceives arising from the hypothetical scenario where a vehicle and train collide, where both driver and conductor are injured, but where the driver is pre-empted from filing a state-law negligence action based on excessive speed whereas the conductor can proceed on exactly those grounds under FELA, *see Waymire*, 218 F.3d at 777, ignores the possibility that this result is precisely what Congress intended. *See Henderson*, 87 F. Supp. 3d at 617 ("[H]olding railroads to a standard of care with respect to their employees that is higher than the state law standards applicable to the general public is precisely the purpose of the FELA." (citing *Brotherhood of R.R. Trainmen v. Va. ex rel. Va. State Bar*, 377 U.S. 1, 3 (1964) (stating that the FELA was enacted "to provide for recovery of damages for injured railroad workers and their families by doing away with harsh and technical common-law rules which sometimes made recovery difficult or even impossible"))); *cf. Crane v. Cedar Rapids & I. C. Ry. Co.*, 395 U.S. 164, 167 (1969) (recognizing the "injustice" of permitting a railroad employee to recover through FELA in circumstances where a non-railroad employee ineligible to sue under FELA could not, but

11

noting that this is the design Congress enacted and courts are not at liberty to rewrite FELA).

**{34}** Fifth, *Waymire* offers a distorted account of FRSA's purpose. The purpose of FRSA is to enhance railroad safety and reduce accidents. 49 U.S.C. § 20101. *Waymire* narrowly emphasizes the purpose of FRSA's pre-emption provision: to ensure national uniformity of the laws and regulations related to railroad safety. 49 U.S.C. § 20106(a)(1). Unlike the *Waymire* court, and contrary to BNSF's arguments, we do not read FRSA's provision pre-empting state law as expressing FRSA's *central* purpose. *Accord Henderson*, 87 F. Supp. 3d at 617 (observing that "the principal purpose of the FRSA is to promote railroad safety, not to achieve nationally uniform railroad safety laws"); *cf. Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (internal quotation marks and citation omitted)).

**{35}** Nor do we agree that allowing FELA excessive-speed claims will undermine FRSA's ancillary purpose of securing national uniformity. "FRSA—and in particular, its speed regulations—were adopted to address the patchwork effect of each state applying its own set of regulations." *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 891 (8th Cir. 2012). As BNSF acknowledges, FELA is a federal statute and is to be applied uniformly throughout the country. *Urie*, 337 U.S. at 174. Therefore, "it is not clear how negligence claims brought under the federal common law threaten the uniformity sought by the FRSA." *Cowden*, 690 F.3d at 891. And even if permitting FELA excessive-speed claims to proceed leads to some variability given the possibility of disparate jury verdicts, *see Lane*, 241 F.3d at 443-44, we do not foresee the type of disuniformity that would arise from application of the multitude of state laws, state regulations, state administrative agency rulings, and state court decisions that are expressly forbidden by FRSA's express pre-emption provision. And the variability that FELA actions would potentially produce is tolerable. *See POM Wonderful*, ___ U.S. at ____, 134 S. Ct. at 2240 ("Congress not infrequently permits a certain amount of variability by authorizing a federal cause of action even in areas of law where national uniformity is important.").

**{36}** Sixth and lastly, we do not accept BNSF's contention that permitting FELA excessive-speed claims to proceed render the FRA track regulations meaningless. "FRSA's regulations are simply to be treated like any other regulation in that complying with them may provide non-dispositive evidence of due care, while violating them requires a finding of negligence *per se*." *Henderson*, 87 F. Supp. 3d at 617 (internal quotation marks and citations omitted). And, contrary to the arguments advanced by BNSF, we do not agree that the FRA regulations exhaust or define a railroad's duty of care towards its employees. *See Earwood v. Norfolk S. Ry. Co.*, 845 F. Supp. 880, 885 (N.D. Ga. 1993) (observing that the regulations regarding track speed propounded by the Secretary are merely minimum safety requirements for railroad track, and that neither the regulations nor FRSA "purport to define the standard of care with which railroads must act with regard to employees"). "Compliance

12

with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions." Restatement (Second) of Torts § 288C (1965). This well-settled principle of tort law is particularly salient here as the United States Supreme Court has previously recognized that

> the theory of the FELA is that where the employer's conduct falls short of the high standard required of him by this Act, and his fault, in whole or in part, causes injury, liability ensues. And this result follows whether the fault is a violation of a statutory duty *or the more general duty of acting with care*, for the employer owes the employee, as much as the duty of acting with care, the duty of complying with his statutory obligations.

*Kernan*, 355 U.S. at 438-39 (emphasis added).

### F.     FELA and FRSA Are Complementary and Permitting the Estate's Excessive-Speed Claim to Proceed Furthers the Purposes of Both Statutes

{37}     Rather than being in irreconcilable conflict, we conclude that FRSA and FELA are complementary in purpose and effect. Both statutes further railroad safety in meaningfully distinct ways. *See Henderson*, 87 F. Supp. 3d at 621 ("[T]he FELA and the FRSA complement each other in significant respects, in that each statute is designed to accomplish the same goal of enhancing railroad safety through different means."). FRSA seeks to enhance safety in every area of railroad operation, and to protect the public as well as railroad workers. *See* 49 U.S.C. § 20101. It does so with national, comprehensive regulatory standards which are enforced by government entities. FELA, by comparison, focuses solely on the safety of railroad workers, and does so by providing railroad employees a private right of action. *Cf. Pom Wonderful*, ___ U.S. at ____, 134 S. Ct. at 2236-38 (concluding that specific regulations regarding juice labeling promulgated under the Federal Food, Drug, and Cosmetic Act did not preclude the plaintiff's Lanham Act claim which asserted that the plaintiff's market competitor mislabeled its juice product and emphasizing the two statutes different enforcement mechanisms as one of the grounds for denying preclusion).

{38}     Permitting FELA claims like the Estate's to proceed is likely to enhance the overall safety of railroad operation. *Fair v. BNSF Ry. Co.*, 189 Cal. Rptr. 3d 150, 160-61 (2015), *cert. denied*, 136 S. Ct. 1378 (2016) ("Allowing safety-related suits under FELA will enhance FRSA's stated purpose of promoting railroad safety and reducing accidents."). In addition, FELA claims may shed light upon potentially dangerous circumstances that regulators might otherwise not identify or that are less amenable to uniform, regulatory solutions. *See* Jerry J. Phillips, *An Evaluation of the Federal Employers' Liability Act*, 25 San Diego L. Rev. 49, 54 (1988) ("The fault-based FELA system, with its compensation exceeding the typical workers' compensation award (particularly for the more serious injuries), is designed to serve as a real and present safety incentive."). In sum, we conclude

13

that what the Supreme Court said in *POM Wonderful* is directly applicable here: allowing FELA suits like the Estate's to proceed "takes advantage of synergies among multiple methods of regulation" and is "consistent with the congressional design to enact two different statutes, each with its own mechanisms to enhance" railroad safety. ___ U.S. at ____, 134 S. Ct. at 2239.

## III.    CONCLUSION

**{39}**    FRSA does not preclude the Estate's FELA excessive-speed claim.  Accordingly, we affirm the Court of Appeals and remand this case to the district court for further proceedings consistent with this opinion.

**{40}    IT IS SO ORDERED.**


_____
        **JUDITH K. NAKAMURA, Justice**

**WE CONCUR:**


_____
**CHARLES W. DANIELS, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**BARBARA J. VIGIL, Justice**