This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36916**

**NORMAN SMITH,**

       Plaintiff-Appellant,

v.

**BNSF RAILWAY COMPANY,
a corporation,**

       Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY
James L. Sanchez, District Judge**

Hubbell Law Firm, LLC
Christopher H. Leach
Kansas City, MO

Davis, Bethune & Jones, LLC
Scott S. Bethune
Wes Shumate
Kansas City, MO

Feliz Angelica Rael
Albuquerque, NM

for Appellant

Atkinson, Baker & Rodriguez, P.C.
Justin D. Rodriguez
Clifford K. Atkinson
Julia E. McFall
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Plaintiff Norman Smith (Smith) appeals the district court's order entering summary judgment in favor of Defendant BNSF Railway Company (BNSF) and dismissing with prejudice Smith's complaint, brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60 (2018), alleging that he was injured by BNSF's negligence while working for the railway. We conclude that summary judgment was improperly granted and therefore reverse.

## BACKGROUND

**{2}** Smith, who was a mechanic for BNSF, sued the railway because he was injured after falling from one of its "hy-rail" section trucks, vehicles capable of being driven on roadways and railways. Smith fell as he was trying to climb up to the driver's seat of the truck. The truck's entryway had three steps and, to the right of the door, one grab hold. Leading up to the fall, the driver's door was open. Smith's right hand was on the grab hold, his left hand was on the inside door handle, and his left foot was on the top step. Smith's foot slipped, the door moved toward him, and his hands lost grip. He fell to the ground and injured his neck and lower back.

**{3}** Smith brought his action under FELA. In relevant part, Smith alleged that BNSF was negligent in failing to provide a reasonably safe way to enter and exit the truck. BNSF denied the allegation. Following discovery, BNSF moved to exclude Smith's railroad liability expert witness, David Joe Lydick, and moved for summary judgment. The district court conducted a hearing on all then-pending motions, but it never ruled on BNSF's motion to exclude Mr. Lydick. Instead it focused on the propriety of summary judgment. The court ruled in BNSF's favor and then issued the order, the subject of this appeal, granting summary judgment to BNSF and dismissing the case with prejudice. The court's order does not state the reason for the ruling.

## DISCUSSION

### I. FELA Actions, FELA Rules of Law, and Standard of Review

**{4}** State and federal courts have concurrent jurisdiction over actions, like Smith's, brought under FELA. 45 U.S.C. § 56. Regardless of the forum, federal law controls such actions substantively, *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165 (2007), while "FELA actions in state courts follow state procedural rules, including rules for summary judgment[,]" *Noice v. BNSF Ry. Co.*, 2015-NMCA-054, ¶ 20, 348 P.3d 1043.

**{5}** Under FELA, a railroad is liable for an employee's injury "resulting in whole or in part from the [railroad's] negligence[,]" including when the injury is caused by "any defect or insufficiency" in the railroad's equipment. 45 U.S.C. § 51. FELA was enacted "[i]n response to mounting concern about the number and severity of railroad

employees' injuries . . . to provide a compensation scheme for railroad workplace injuries, pre-empting state tort remedies." *Sorrell*, 549 U.S. at 165. "Unlike a typical workers' compensation scheme, which provides relief without regard to fault," *id.*, some evidence of a railroad's negligence must be presented to survive summary judgment, *Walker v. Ne. Reg'l Commuter R.R. Corp.*, 225 F.3d 895, 897 (7th Cir. 2000). Nevertheless, courts are to construe FELA liberally to effectuate its purpose of helping injured railroad workers. *Urie v. Thompson*, 337 U.S. 163, 181-82 (1949); *accord Noice v. BNSF Ry. Co.*, 2016-NMSC-032, ¶¶ 16-17, 383 P.3d 761.

**{6}** "Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law." *Sorrell*, 549 U.S. at 165-66. Thus, the two elements of a FELA action are: "(1) negligence, i.e., the standard of care, and (2) causation, i.e., the relation of the negligence to the injury." *Id.* at 169 (internal quotation marks and citation omitted). Beginning with the first of these, "[w]hat constitutes negligence for the FELA statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes." *Noice*, 2016-NMSC-032, ¶ 18 (alteration, internal quotation marks, and citation omitted). In that regard, "[t]he standard applied by federal courts in determining whether there is sufficient evidence to send a FELA case to the jury is significantly broader than the standard applied in common law negligence actions." *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1286 (10th Cir. 2018) (internal quotation marks and citation omitted). "A FELA case can be taken from the jury only when there is a complete absence of probative facts to support the employee's claim." *Id.* (alteration, internal quotation marks, and citation omitted).

**{7}** FELA negligence encompasses a railroad's "duty to use reasonable care in furnishing its employees with a safe place to work." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 558 (1987). As our UJI 13-908 NMRA indicates, FELA negligence may take the form of a failure to do an act "which a reasonably prudent person, in the exercise of ordinary care, would do in order to prevent injury to . . . another." "In deciding whether ordinary care has been exercised, the conduct in question must be considered in light of all the surrounding circumstances, as shown by the evidence." UJI 13-910 NMRA.

**{8}** Reasonable foreseeability of harm is an "essential ingredient of FELA negligence." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011) (alteration, emphasis, internal quotation marks, and citation omitted). Therefore, under FELA, to establish that a railroad breached its duty to provide its employees with a safe workplace, the plaintiff must show circumstances in the workplace that the railroad could have reasonably foreseen as creating a potential for harm. *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996).

**{9}** Concerning the second element of a FELA claim, causation, "FELA's language . . . is as broad as could be framed." *McBride*, 564 U.S. at 691 (internal quotation marks and citation omitted). "[I]n comparison to tort litigation at common law, a relaxed standard of causation applies under FELA." *Id.* at 692 (internal quotation marks and

citation omitted). "[T]he test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506 (1957); *accord* UJI 13-915 NMRA.

**{10}** Turning now to the district court's grant of summary judgment under Rule 1-056 NMRA, our review is de novo. *See Noice*, 2016-NMSC-032, ¶ 10.

**{11}** We are reminded of the following.

> Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. We resolve all reasonable inferences in favor of the party opposing summary judgment, and we view the pleadings, affidavits, depositions, answers to interrogatories, and admissions in the light most favorable to a trial on the merits. . . . Where the evidence is susceptible to reasonable conflicting inferences bearing upon material facts, entry of summary judgment is improper. We are mindful that summary judgment is a drastic remedial tool which demands the exercise of caution in its application. . . . An issue of fact is "genuine" if the evidence before the court considering a motion for summary judgment would allow a hypothetical fair-minded fact[-]finder to return a verdict favorable to the non-movant on that particular issue of fact. An issue of fact is "material" if the existence (or non-existence) of the fact is of consequence under the substantive rules of law governing the parties' dispute.

*Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶¶ 22-23, 294 P.3d 1276 (alterations, internal quotation marks, and citations omitted).

## II. Summary of the Parties' Arguments, the District Court's Ruling, and the Propriety of Taking Mr. Lydick's Testimony Into Account in the Summary Judgment Analysis

**{12}** On appeal and in his reply to BNSF's motion for summary judgment, Smith argues that he presented the district court with evidence of BNSF's negligence and evidence that BNSF's negligence caused Smith's injury; he argues that this presentation precludes summary judgment. BNSF counters, as it did below, that Smith cannot establish evidence of BNSF's negligence. As noted, along with its motion for summary judgment, BNSF filed a motion in limine under Rule 11-702 NMRA, to exclude the expert opinion of Smith's expert, Mr. Lydick. In that motion, BNSF argued that Mr. Lydick is not qualified to testify and that his opinions lack foundation. BNSF referenced these arguments in support of its motion for summary judgment, which was granted.

Although the basis for the ruling is not apparent,[1] the court clearly did not rule on the motion in limine or otherwise determine the admissibility of Mr. Lydick's opinions.

**{13}**    Before considering the parties' arguments in more detail, we first dispose of BNSF's request that, in our review of the summary judgment motion, we treat Mr. Lydick's testimony as speculative, lacking in foundation, and therefore inadmissible. We decline to do so. The district court did not rule on the motion in limine or otherwise rule on the admissibility of Mr. Lydick's opinions. Instead, the court considered Mr. Lydick's testimony for purposes of the summary judgment motion, stating, "I'm not making any specific findings because I don't have to, and I don't want to. I'm just saying that I think there is no question of fact [and BNSF] is entitled to judgment as a matter of law[.]"

**{14}**    BNSF in effect asks this Court to affirm the district court's grant of summary judgment, but on a different ground than that relied on by the district court. In other words, it asks us to apply the "right for any reason" doctrine. *See Freeman v. Fairchild*, 2018-NMSC-023, ¶ 30, 416 P.3d 264 ("Under the right for any reason doctrine, an appellate court may affirm a district court ruling on a ground not relied upon by the district court if (1) reliance on the new ground would not be unfair to the appellant, and (2) there is substantial evidence to support the ground on which the appellate court relies." (alterations, internal quotation marks, and citation omitted)). We decline BNSF's request, because applying the doctrine would require us "to assume the role of the trial court by delving into fact-dependent inquiries." *Id.* (alteration, internal quotation marks, and citation omitted)). The admissibility of Mr. Lydick's opinions under Rule 11-702 presents the type of fact-intensive inquiry that would be inappropriate for us to undertake. *See id.* ¶¶ 30, 35.  Therefore, for purposes of our review, we assume without deciding that Mr. Lydick's opinions are admissible and disregard BNSF's arguments to the contrary.

### III.    Genuine Issue of Material Fact Regarding Negligence

---

1The district court judge declined to provide reasoning for his grant of BNSF's motion for summary judgment, stating instead that "I'm not making specific findings because I don't have to, and I don't want to." While it is true that our Supreme Court has not required district courts to explain summary judgment rulings in any detail, we previously have expressed our distaste for this standard and we take this opportunity to do so again today. *See Wrongful Death Estate of Archuleta v. Thi of N.M., LLC*, No. 31,950, memo. op. ¶ 8 n.2, (N.M. Ct. App. Jan. 9, 2014) (non-precedential). As we previously stated, "[b]oth [district and appellate] courts have the duty to provide the parties, in an expressed, transparent, and principled manner, the basis on which a summary judgment is supported." *Id*.

But the district court judge in this case did not simply fail to provide reasoning for granting summary judgment. The judge stated, "I would rather just know that I'm not wasting my time with a jury trial[,]" suggesting he was granting summary judgment because he wanted a ruling from the appellate courts before spending time on a trial. What is more, the judge went on to say, "I like a total case summary judgment. If it's just a partial one, I have to try it anyway, I go the other way." This suggests that the judge would have denied BNSF's motion for summary judgment if it had not disposed of the entire case since he would have to conduct a trial regardless. It should go without saying that these are not valid reasons to grant or deny summary judgment. The district court judge's results-driven approach to summary judgment is a great disservice to the parties and to the administration of justice.

**{15}** Returning to the central question in this case, the propriety of summary judgment, we consider first whether there is a genuine issue of material fact regarding BNSF's negligence. Smith's theory of liability is that, in view of a "three-point contact" rule applicable to employees getting into vehicles like the hy-rail truck, BNSF's failure to equip its truck with enough "secure," or stable, points of contact for a person's hands and feet breached its duty of ordinary care. According to Smith, the three-point contact rule is both established by BNSF's safety rules and is a safety principle recognized in the commercial motor vehicle industry. The rule provides that a person getting into a work vehicle must do so by maintaining at least three points of hand-and-foot contact with the vehicle—its steps and other attachments. This failure created a condition that was not reasonably safe, Smith maintains. Smith further maintains that his injury was foreseeable.

**{16}** In support of his claim that BNSF failed to exercise ordinary care, Smith points to Mr. Lydick's deposition testimony.

> To safely climb on and off something, you have to have a certain minimum number of secure points of contact. . . . An employer who has a duty to provide a reasonably safe place of work must provide equipment that provide[s] employees the means to maintain three points of secure contact. . . . [Concerning] BNSF railroad and railroad industry standards . . .[, e]mployees must maintain three points of secure contact when climbing on or off equipment. A[t] BNSF railroad, the [hy-rail] truck is a piece of railroad equipment that requires employees to maintain three points of secure contact. . . . BNSF did not provide . . . Smith a [hy-rail truck] that provided him three points of secure contact to enter the front driver's side door. And in the [hy-rail truck] acquisition process, the BNSF should have required the same upper forward secure grab hold for the front driver's side door as provided on each other door.

**{17}** Mr. Lydick also testified repeatedly at his deposition that there was no reasonably safe means for Smith to enter the hy-rail truck's driver's door. Mr. Lydick pointed to the absence of an "A-pillar" grab hold at the hy-rail truck's driver's door entryway, which he says the vehicle was equipped to have installed, as evidence of the lack of a stable point of contact. He further testified that BNSF did not make available a reasonably safe alternative to the A-pillar grab hold, such as an overhead grab hold inside the door opening, or a means to lock the door while in an open position, so that the handles fastened to the door's interior would remain stable when used as a grab hold. Relatedly, Mr. Lydick testified that the steering wheel was not such a reasonably safe alternative, as argued by BNSF.

**{18}** In sum, Smith produced evidence that the hy-rail truck as equipped at the time of Smith's injury was not reasonably safe and that a railroad exercising ordinary care would have equipped the hy-rail truck's driver's entryway with a secure grab hold, such as an A-pillar grab hold.

**{19}** As for foreseeability, the undisputed facts about the hy-rail truck's configuration, together with Mr. Lydick's statements, show circumstances in Smith's workplace about which a person could conclude that harm was reasonably foreseeable. Mr. Lydick testified that, in this situation, a reasonably safe place to work would include a means for maintaining three points of secure contact. He also testified that BNSF did not provide Smith with enough secure contact points. Lastly, he testified that BNSF and railroad-industry standards require that employees maintain three points of contact while getting into railroad vehicles. One could reasonably conclude from these statements and the undisputed circumstances that BNSF knew or should have known how its hy-rail was configured and should have known that the configuration provided too few stable points of contact. This would lead to the reasonable inference that harm resulting from hy-rail truck entry was foreseeable. *Cf. Gadsden v. Port Auth. Trans-Hudson Corp.*, 140 F.3d 207, 209 (2d Cir. 1998) (reversing the district court's grant of summary judgment after deciding that a reasonable jury could conclude from the evidence that there was an inadequate number of sufficient handholds and footboards on a "high-rail vehicle," that the railroad had actual or constructive knowledge of the handholds and footboards in plain view on the vehicle, and that the circumstance created an unsafe workplace).

**{20}** On this point, BNSF does not deny that it knew how the hy-rail truck was configured. Rather, it argues that it had no notice that the use of the door handle as a point of contact would lead to injury. In particular, it highlights the absence of any "close calls" or prior reports of employee falls at the entryway. But this form of notice of danger exceeds that necessary for a FELA negligence claim. *See Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 121 (1963) (commenting that the existence of incidents similar to the one giving rise to the FELA claim at issue was "too narrow a concept of foreseeable harm to negative negligence under [FELA]"). BNSF further highlights the absence of evidence that it was alerted by anyone—an inspector, for example—to the danger of allowing employees to use the door handle as a point of contact. Here, too, BNSF mistakenly presumes that for harm to be reasonably foreseeable, direct notice of the harm need be given. *Cf. Szekeres v. CSX Transp., Inc.*, 617 F.3d 424, 431 (6th Cir. 2010) (noting that notice under FELA "may come from proof of facts permitting a jury inference that the defect . . . should have been discovered[] by the exercise of reasonable care or inspection" (internal quotation marks and citation omitted)). All in all, Smith has produced evidence of foreseeable harm: evidence establishing a reasonable ground for BNSF to anticipate that mishap or injury would result from the absence of some additional attribute at the hy-rail truck entryway.

**{21}** In support of affirmance, BNSF makes various arguments why Mr. Lydick's testimony does not give rise to a genuine issue of material fact. Much of it consists of a legal attack going to the nature of Mr. Lydick's testimony, and the remainder, an attack on the factual integrity of Mr. Lydick's opinions. We briefly address each of these categories of argument but remain unpersuaded.

**{22}** In the first, BNSF makes the uncontroversial observation that the proper inquiry under FELA is whether the method used by the employer was reasonably, not

absolutely, safe. But then BNSF contends that evidence about safer, alternative methods is prohibited in undertaking this inquiry. In particular, BNSF argues that Mr. Lydick's testimony positing that there were better or safer options at BNSF's disposal—evidence BNSF calls inadmissible and irrelevant—cannot be considered. The cases cited by BNSF in support of this proposition suggest that safer, alternative methods evidence is not admissible when there is no showing the method employed by the railroad was unreasonably safe. *See, e.g.*, *Soto v. S. Pac. Transp. Co.*, 644 F.2d 1147, 1148 (5th Cir. 1981) (per curiam) ("That there were other, arguably more advanced, methods in use by the defendant . . . is of no significance where the method in use by [the plaintiff] *was not an inherently unsafe one.*" (emphasis added)); *Atlantic Coast Line Ry. Co. v. Dixon*, 189 F.2d 525, 527 (5th Cir. 1951) ("The employer is not required to furnish the employee the latest, best, or most perfect appliances with which to work, nor to discard standard appliances already in use upon the discovery of later improvements, *provided those in use are reasonably safe and suitable.*" (emphasis added)). This, however, is not the situation at issue here. As stated, Mr. Lydick testified the hy-rail truck as equipped was not reasonably safe and that BNSF fell below the standard of care by failing to better equip the truck. BNSF cites no case supporting the contention that where, as here, a plaintiff has made a showing that the method utilized was unreasonably safe, evidence of safer, alternative methods is inadmissible, and we thus assume none exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482. After all, when a railroad breaches its duty by asking its employees to use equipment that is not reasonably safe, it may be said that the railroad should have employed a safer option.

**{23}** BNSF's second class of argument pertains to its contention that no reasonable juror would accept Mr. Lydick's testimony. Without getting into the detail of these points, we simply note that this argument tends to reinforce the conclusion that there remains in this case reasonable conflicting inferences bearing on material facts. The jury, not this Court, is the appropriate audience for BNSF's remarks tending to discredit Mr. Lydick's opinions about the hy-rail truck.

**{24}** Overall, none of BNSF's arguments can overcome the inescapable fact that Smith presented evidence that BNSF breached its duty of reasonable care by failing to provide an adequate number of places for Smith to safely make three points of contact. Based on this, a hypothetical fair-minded fact-finder could find that BNSF breached its duty to Smith.

## IV.     Genuine Issue of Material Fact Regarding Causation

**{25}** Having found a genuine issue of material fact regarding negligence, we briefly consider whether there is also evidence supporting the causal link between BNSF's negligence and Smith's injuries. Without such evidence, Smith's claim cannot prevail. BNSF states that we need not consider this issue because, it contends, its summary judgment motion focused on negligence, and the district court's ruling turned on that issue only. We consider causation anyway, because BNSF did indeed raise causation in its motion (albeit only minimally) and since, again, our review of the district court's

grant is de novo. *Cf. Hernandez v. Grando's LLC*, 2018-NMCA-072, ¶ 9, 429 P.3d 1259 ("In ruling on a motion for summary judgment, a court is not wed to a party's assertion of conclusions of law whether in a petition, complaint, or motion for summary judgment, even if the conclusions are admitted by the opposing party." (alteration, internal quotation marks, and citation omitted)).

**{26}** Mindful that "Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury[,]" *Rogers*, 352 U.S. at 510 (footnote omitted), we see no reason this case is not fit for the jury. Fair-minded jurors could honestly differ on whether BNSF's negligence, if found, played a part in Smith's injury. That is, a juror could rationally find that the door's having swung toward Smith contributed to his fall by causing him to lose his balance, balance he would have maintained had his left hand been clutching something stable. Arguably, BNSF's failure to better equip the hy-rail truck was the reason there was nothing stable for Smith to grab hold of with his left hand. The potential for a juror to draw these conclusions gives rise to a genuine issue of material fact regarding causation.

**{27}** Ultimately, this is a case fit for the jury's consideration. As the United States Supreme Court observes, "[t]he right to trial by jury . . . is part and parcel of the remedy afforded railroad workers under [FELA]." *Bailey v. Cent. Vermont Ry., Inc.*, 319 U.S. 350, 354 (1943). BNSF argues strenuously that there is no genuine issue of material fact for trial. To that we reply, again borrowing *Bailey*'s words, "To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them." *Id.*

**{28}** Based on evidence presented about the circumstances of Smith's injuries, there are genuine issues of material fact in dispute regarding negligence and causation. Accordingly, summary judgment is improper.

**CONCLUSION**

**{29}** We reverse and remand for further proceedings consistent with this opinion.

**{30}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JENNIFER L. ATTREP, Judge**