**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMSC-018**

**Filing Date: April 1, 2010**

**Docket No. 31,247**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellant,**

**v.**

**RONALD SANTIAGO,**

> **Defendant-Appellee.**


**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Albert S. "Pat" Murdoch, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellant

Joseph Newton Riggs, III
Natalie A. Bruce
Albuquerque, NM

for Appellee

## OPINION

**BOSSON, Justice.**

**{1}**     The subject of a first-degree murder prosecution, Defendant successfully moved to suppress incriminating evidence that the police obtained from his house on the basis that the warrant did not authorize a nighttime search.  Rather than proceed to trial without the evidence, the State appealed the suppression directly to this Court.

**{2}**     We address for the first time this Court's Rule 5-211(B) NMRA, which  requires

1

special permission to conduct a nighttime search. We discuss the rule's rationale and explain the circumstances that trigger its application. We hold that when law enforcement lawfully entered and secured the premises during the day, including continuous surveillance to ensure its vacancy, and lawfully obtained a warrant to continue their search of the premises—all before 10:00 p.m.—then special permission for a nighttime search was not necessary under Rule 5-211(B). Accordingly, we reverse the district court's order of suppression and remand for further proceedings.

**BACKGROUND**

**{3}**     Ten months after John and Bernadette Ohlemacher were gunned down in their home, the Albuquerque Police Department (APD) got its first major break in the investigation. On June 12, 2006, Defendant Ronald Santiago surrendered himself to the U.S. Secret Service in Albuquerque, claiming that he had been forging checks in his capacity as a loan officer. During the initial interview, Defendant told Secret Service Agent Bryan Nguyen that he needed psychological help. Agent Nguyen sent Defendant to a local hospital for a mental evaluation.

**{4}**     During the course of the forgery investigation, Agent Nguyen learned that Defendant had serviced the Ohlemachers' loan application shortly before their deaths. Agent Nguyen then contacted APD and informed them of his discovery. Following up on this information, APD learned that Defendant's father recently had removed several firearms and Defendant's jeep from Defendant's home for "safekeeping" while he was in the hospital. Consequently, on the afternoon of June 14, APD officers cleared and secured Defendant's home, his parents' home, and his jeep, all in anticipation of receiving a search warrant for evidence linking him to the Ohlemachers' deaths. Defendant remained in the hospital during this time, and his premises remained unoccupied and secured pending the execution of a warrant.

**{5}**     The district judge issued the warrant at 8:54 that evening. Rule 5-211(B) provides, in part, "[a] search warrant shall direct that it be served between the hours of 6:00 a.m. and 10:00 p.m., according to local time, unless the issuing judge, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at any time." APD did not request, and the judge did not issue, a warrant that could be executed after 10:00 p.m. (hereinafter "nighttime" search or warrant).

**{6}**     Exactly what happened next was the source of considerable contention and confusion at the trial court. What is clear from the record, however, is that APD officers at some point that evening reentered the home with the warrant and seized evidence from all three locations. The search of Defendant's home yielded a shell casing from a 9mm Ruger with markings that matched those found on casings recovered at the scene of the Ohlemachers' deaths the year before. Based on that evidence, Defendant was charged with two counts of first-degree murder.

**{7}**     Defendant moved to suppress the evidence, claiming that the search of his home did

2

not commence until after 10:00 p.m. and was therefore illegal. After a hearing, the trial court granted the motion. The court agreed with Defendant that APD had not entered the home to gather evidence until after 10:00 p.m. Although, as we have seen, the search process had begun earlier that afternoon, the court concluded that APD needed a nighttime warrant. The prosecutor then moved the court to reconsider its ruling. After another hearing, the trial court again ruled in Defendant's favor. This interlocutory appeal followed. *See State v. Smallwood*, 2007-NMSC-005, ¶ 11, 141 N.M. 178, 152 P.3d 821 (holding that this Court has jurisdiction over interlocutory appeals "in situations where a defendant may possibly be sentenced to life imprisonment or death").

## DISCUSSION

**{8}** We review a trial court's suppression order as a mixed question of law and fact. We apply a de novo standard to the court's legal conclusions and a substantial evidence standard to its findings of fact. *See State v. Garcia*, 2005-NMSC-017, ¶ 27, 138 N.M. 1, 116 P.3d 72.

**{9}** The State argues that suppression is not the appropriate remedy in this case because (1) nighttime searches are not forbidden by the Constitution, and (2) Defendant was not in his home during the night in question and suffered no prejudice. Defendant supports the suppression order, arguing (1) that the search was unreasonable under the New Mexico Constitution, and (2) even if not, the search violated Rule 5-211(B).

**{10}** We require exclusion of evidence obtained from a search or seizure conducted in violation of the state constitution. *See State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 17, 130 N.M. 386, 25 P.3d 225 ("The exclusionary rule requires suppression of the fruits of searches and seizures conducted in violation of the New Mexico Constitution."); *see also State v. Gutierrez*, 116 N.M. 431, 447, 863 P.2d 1052, 1068 (1993) ("The exclusionary rule imposes the template of the constitution on the entire warrant-issuing process."). As a general rule, the federal constitution also requires suppression of evidence obtained in a manner that runs afoul of the Fourth Amendment. *See, e.g.*, *Weeks v. United States*, 232 U.S. 383 (1914). However, "[i]t is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so." *Schlieter v. Carlos*, 108 N.M. 507, 510, 775 P.2d 709, 712 (1989). Thus, we will first consider whether suppression is necessary under Rule 5-211(B), as that would resolve the matter on non-constitutional grounds.

## Rule 5-211(B) Does Not Invalidate This Search

**{11}** As a general proposition, a nighttime search implicates special concerns of privacy and safety—especially when the search is of a home. *See Monroe v. Pape*, 365 U.S. 167, 210 (1961) ("Searches of the dwelling house were the special object of this universal condemnation of official intrusion. Night-time search was the evil in its most obnoxious form." (footnote omitted)), *overruled on other grounds by Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 658-59 (1978); *Jones v. United States*, 357 U.S. 493, 498 (1958) ("[I]t

3

is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home."); *see also Gooding v. United States*, 416 U.S. 430, 464 (1974) (Marshall, J., dissenting) ("[S]earches conducted in the middle of the night . . . involve a greater intrusion than ordinary searches and therefore require a greater justification." (internal quotation marks and citation omitted)).

**{12}** Chief among these concerns are the "peculiar abrasiveness of official intrusions at such periods," *United States v. Ravich*, 421 F.2d 1196, 1201 (2d Cir. 1970), and the heightened "possibility of terror and gunplay which may arise from forcible nighttime entries," *State v. Brock*, 653 P.2d 543, 545 (Or. 1982). Courts are aware  that a person is especially vulnerable in "the privacy of his place of repose during the nighttime hours," if he is forced "to face a nocturnal confrontation with the police." *United States v. Jerez*, 108 F.3d 684, 690 (7th Cir. 1997) (citing *Monroe*, 365 U.S. at 210 (Frankfurter, J., dissenting)). Consequently, our Rules of Criminal Procedure require law enforcement to obtain special permission from the issuing judge to serve a warrant after 10:00 p.m.

**{13}** Rule 5-211(B) provides: "A search warrant shall direct that it be served between the hours of 6:00 a.m. and 10:00 p.m., according to local time, unless the issuing judge, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at any time." We promulgated this rule under our constitutional authority to exercise "superintending control over all inferior courts." N.M. Const. art. 6, § 3. Superintending control empowers us "to make rules for the orderly flow of criminal cases through lower courts." *Smallwood*, 2007-NMSC-005, ¶ 15. As with most rules of criminal procedure, Rule 5-211(B) is designed to "secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." Rule 5-101(B) NMRA.

**{14}** Rule 5-211(B) reflects our view that in most cases—even with a warrant—nighttime searches are unreasonable due to the special privacy and safety concerns that have been thoroughly discussed in the case law. Being proactive, we choose to mitigate these concerns by limiting the hours within which warrants may be executed in all but the exceptional circumstance. Even then, a judge may issue a nighttime warrant only when law enforcement officials demonstrate "reasonable cause" sufficient to persuade the judge that a nighttime search is necessary. This stricter standard evinces our view that it is a better use of judicial resources to screen nighttime searches in advance, than to engage in the more arduous task of post-search review. As an added benefit, compliance with the rule enhances the likelihood that any evidence recovered during a nighttime search will survive constitutional scrutiny.

**{15}** We drafted Rule 5-211(B) to address the typical nighttime search—which is also the one most fraught with risk—where law enforcement officers arrive at an occupied residence after 10:00 p.m. without prior notice. They announce their presence, secure the premises, serve their warrant, and enter to gather evidence. In that situation, the potential for dangerous or offensive interaction between police and citizen is especially acute due to an

4

unexpected nighttime intrusion into the home. The danger is to the public and law enforcement alike; our rule is designed to protect them both. Thus, when the surprise, shock, and indignity of a nighttime intrusion is even a possibility, our rule requires law enforcement officers to show "reasonable cause" and obtain special permission on the face of the warrant. Absent special permission, the police must wait until morning to conduct their search.

**{16}** The case before us, however, presents a dramatically different situation. Instead of surprising Defendant and his family with a warrant in the middle of the night, APD had already (1) entered the premises that afternoon and performed a protective sweep, (2) displaced Defendant's wife and nephew from the home, and (3) kept the premises under constant surveillance to ensure that it would be unoccupied at whatever hour the warrant was eventually served. These steps guaranteed, as a matter of demonstrable fact, that this particular search would *not* be abrasive, dangerous, or confrontational, regardless of whether APD entered to gather evidence at 9:30 p.m., 10:30 p.m., or 3:00 in the morning.

**{17}** That Defendant's home was unoccupied throughout the search was no mere fortuity. This is not a case of the police executing a warrant at night *believing* the house to be unoccupied or by happenstance finding the house empty. APD's actions earlier that day made *certain* that the house would be vacant when the warrant arrived, effectively guaranteeing an entry that would be free from confrontation.

**{18}** We emphasize that the reasonableness of the initial, pre-warrant entry has yet to be determined in this case. Given the interlocutory nature of the present appeal, Defendant has not yet had an opportunity to challenge the constitutionality of the initial sweep of his home or the contemporaneous exclusion of his family from the premises. The reasonableness of that initial interference, presumably based upon a claim of probable cause plus exigent circumstances, has not been raised, briefed, or argued. As a result, we do not reach that issue on appeal, and express no opinion on it. The trial court is free to entertain such a challenge on remand. For purposes of this appeal, therefore, we assume, without deciding, the legality of the initial entry, the protective sweep, and the exclusion of Defendant's family from the home.

**{19}** Functionally, the service of the warrant in this case was simply a continuation of a process that had begun earlier that day. If, for example, APD had obtained its warrant and begun the process of clearing and securing the home at 8:00 p.m., but search personnel did not actually arrive and begin to examine and inventory the contents of the house until after 10:00 p.m., we would be hard-pressed to say that Rule 5-211(B) had been violated. In applying our rule, we would focus on the substance of *when* the police first breached the privacy of the household, not on the formality of the officers' titles or their specific activities once inside the home. *Cf. Jones v. State*, 128 P.3d 521, 537 (Okla. Crim. App. 2006) (holding that service of a warrant occurs "once an officer crosses the threshold for the purpose of beginning the search or for securing the residence for a later search").

**{20}** Of course, in our case the initial sweep and securing of the house preceded the

warrant. However, the purpose of the initial entry was the same as in the hypothetical above—securing the premises in anticipation of a search. We see no functional or principled distinction in this case whether that search process began before or after the warrant issued, as long as it was lawful. Any interference with Defendant's privacy or possessory interests first occurred during the afternoon, when APD secured and swept his home and dispossessed its residents. That interference continued throughout the afternoon and evening until the search was completed. The warrant simply gave APD permission to finish a continuous process that had started earlier in the day, and to restore the constitutional interests of Defendant and his family in their home as soon as possible.

**{21}** We should not lose sight of the latter point. Defendant's family had already been dispossessed. They were out of their home, night had fallen, and they had a right to return to their home as soon as practicable. Under the circumstances, had APD delayed the entry to gather evidence until morning, Defendant's family would have suffered needlessly. It was not our intent in fashioning Rule 5-211(B) to inflict such unnecessary inconvenience on our citizens.

**{22}** Defendant argues that admitting this evidence will undermine the strength of Rule 5-211(B) and lead to unpredictability and uncertainty. We are mindful of the importance of simple and easily applied rules in the law enforcement context. We are confident that our ruling will not make the rule's application less certain or predictable. Rule 5-211(B) remains a bright-line rule where police do not initially serve a search warrant or enter the premises until after 10:00 p.m. Without special written permission, the fruits of those searches will be suppressed. Furthermore, we expressly reject the proposed exceptions to the rule offered by the State such as lack of bad faith on the part of the police, lack of prejudice to Defendant, or substantial compliance. Such after-the-fact justifications have no place in determining compliance with Rule 5-211(B).

**The Nighttime Search of Defendant's Home Was Not Unconstitutional**

**{23}** Given that the search did not violate Rule 5-211(B), we must address Defendant's argument that the nighttime search of his home was unconstitutional. As a general rule, a warrantless search inside a home is illegal, *see Payton v. New York*, 445 U.S. 573, 586 (1980), and any evidence recovered as a direct result must be suppressed as the fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 487 (1963). Here, Defendant does not dispute that APD obtained a valid warrant to search his home.

**{24}** With the exception of its timing, Defendant does not argue that APD unreasonably executed the search of his home. Thus, if this search was unreasonable, and therefore unconstitutional, it must be solely because the evidence-gathering phase occurred after 10:00 p.m. However, as we have discussed earlier in this opinion, the special concerns raised by nighttime searches were simply not at play, given the facts of this particular case. Defendant remained in the hospital throughout the search. APD was certain that Defendant's home was unoccupied because officers had cleared and secured the home that afternoon; they had

maintained a continuing presence at the house throughout the afternoon and evening. Constitutionally speaking, APD knew that no one was home to experience the "peculiar abrasiveness" of a nighttime search, and consequently, the re-entry after 10:00 p.m. did not raise any "possibility of terror and gunplay."

**{25}** Both the state and federal constitutions are silent on the subject of nighttime searches.[1] What is clear from both constitutions and the applicable precedent is that law enforcement officers may only search a home if they have a warrant or satisfy an exception to the warrant requirement. In this case, APD obtained a warrant and executed it in a constitutionally reasonable manner; we need not inquire into the exceptions. We have little difficulty, then, concluding that the search of Defendant's home was constitutionally reasonable.

**CONCLUSION**

**{26}** We reverse the trial court's suppression of evidence and remand for further proceedings consistent with this opinion.

**{27}** **IT IS SO ORDERED.**

 

_____

**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____

**EDWARD L. CHÁVEZ, Chief Justice**

_____

**CHARLES W. DANIELS, Justice**

---

[1]Rule 5-211(B)'s special requirements for a nighttime search are not directly derived from either the state or federal constitutions, and, as previously explained, go beyond minimum constitutional standards. *Cf. State v. Garcia*, 2002-NMCA-050, ¶ 15, 132 N.M. 180, 45 P.3d 900 ("[T]he failure to establish reasonable cause for issuance of a nighttime search warrant . . . is tantamount to an unreasonable, and therefore unconstitutional, search."). Accordingly, this language from *Garcia,* equating the rule with the constitution, is no longer accurate.

**RICHARD E. RANSOM, Justice (Pro Tem)**

**PETRA JIMENEZ MAES, Justice (specially concurring)**

**MAES, Justice (specially concurring).**

**{28}** I agree with the majority opinion that the search in this case did not violate Rule 5-211(B) NMRA because the Albuquerque Police Department (APD) performed a protective sweep of Defendant's home prior to 10:00 p.m. to ensure that the home would be unoccupied when the search warrant was served. I further agree with the majority opinion that the search in this case did not violate the New Mexico or United States Constitutions because "APD obtained a warrant and executed it in a constitutionally reasonable manner." Accordingly, I agree in the result reached by the majority, which reverses the district court's order of suppression and remands for further proceedings.

**{29}** Although the foregoing analysis completely disposes of Defendant's claims on appeal, the majority opinion proceeds to state in paragraph twenty-two that it expressly rejects "the proposed exceptions to the rule offered by the State such as lack of bad faith on the part of the police, lack of prejudice to Defendant, or substantial compliance. Such after-the-fact justifications have no place in determining compliance with Rule 5-211(B)." It is well established that legal conclusions "unnecessary to the decision of the issues before the court" constitute dicta, which is "not binding as a rule of law." *Rocky Mountain Life Ins. Co. v. Reidy*, 69 N.M. 36, 40, 363 P.2d 1031, 1035 (1961). Because "[t]his court does not give advisory opinions," *Bell Tel. Labs., Inc. v. Bureau of Revenue*, 78 N.M. 78, 84, 428 P.2d 617, 623 (1966), this portion of the majority opinion, which lacks legal analysis or support, is improper.

**{30}** I would leave open the question of whether a technical violation of Rule 5-211(B), one which does not involve the heightened privacy or safety concerns animating the prohibition on nighttime searches, requires the suppression of relevant evidence. *See State v. Malloy*, 2001-NMCA-067, ¶ 11, 131 N.M. 222, 34 P.3d 611 ("Technical violations [of Rule 5-211] require suppression only if the defendant can show prejudice or if there was a deliberate disregard of the rule by the police."); 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.5 (b) (4th ed. 2004) (noting that, in the absence of a constitutional violation, the exclusionary rule applies to the violation of court rules only if "the violation significantly affected * * * the defendant's substantial rights" (internal quotation marks omitted)). In the absence of a case or controversy, it is premature for this Court to speculate on how it would rule on such an issue. Therefore, I specially concur in the majority opinion.

_____

**PETRA JIMENEZ MAES, Justice**

**Topic Index for *State v. Santiago*, No. 31,247**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-IA | Interlocutory Appeal |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| CT-SU | Suppression of Evidence |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-PJ | Prejudice |
| CA-SZ | Search and Seizure |
| CA-SW | Search Warrant |
| CA-NS | Nighttime Search* |
| CA-CP | Criminal Procedure, General |

*Denotes suggested new topic for index