This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37083**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellant,

v.

**TIMOTEO BARAJAS,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}** The State appeals from the district court's order suppressing the results of Defendant's blood-alcohol test. The State contends that Defendant voluntarily and unequivocally consented to the blood draw. Unpersuaded, we affirm.

**DISCUSSION**

**{2}** A ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Santiago*, 2010-NMSC-018, ¶ 8, 148 N.M. 144, 231 P.3d 600. In reviewing a district court's rulings on a motion to suppress, "[we] review[] factual findings under a substantial evidence standard, viewing the facts in the light most favorable to the prevailing party, and we review de novo whether the district court correctly applied the law to the facts." *State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337. In addition, we "indulge in all reasonable inferences in support of the district court's ruling and disregard all evidence and inferences to the contrary." *State v. Bravo*, 2006-NMCA-019, ¶ 5, 139 N.M. 93, 128 P.3d 1070.

**{3}** At the outset, we address arguments in the State's reply brief that seem to reflect a belief that the consent required for a blood draw is somehow lesser or different than the consent to other Fourth Amendment searches, in light of the Implied Consent Act. Our case law does not support such a view. Since the United States Supreme Court determined that a blood draw is a search subject to the warrant requirement, our New Mexico Supreme Court has declared, "[i]mplied consent laws can no longer provide that a driver impliedly consents to a blood draw." *State v. Vargas*, 2017-NMSC-029, ¶ 22, 404 P.3d 416 (citing *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 2185 (2016)). Valid consent constitutes an exception to the warrant requirement. *See Gallegos v. Vernier*, 2019-NMCA-020, ¶¶ 19-20, ___P.3d ___ (acknowledging that a blood draw performed after valid consent does not violate the Fourth Amendment), *cert. denied*, 2019-NMCERT- ___ (No. S-1-SC-37431, Feb. 18, 2019). When examining the validity of a defendant's consent to a blood draw, we have applied the same standard and principles as we would to consent for other searches that require a warrant. *See id.* (applying the usual principles and standards for the validity of consensual searches to the consent given for the blood draw). We do the same here.

**{4}** Whether a search is consensual is a question of fact to be determined by the trial court from the totality of the circumstances. *See State v. Flores*, 1996-NMCA-059, ¶ 20, 122 N.M. 84, 920 P.2d 1038. Courts consider three factors in determining whether consent is voluntary: "(1) the consent must be unequivocal and specific, (2) the consent must be given without duress or coercion, and (3) the first two factors must be assessed with a presumption against the waiver of constitutional rights." *Id.* The State carries the burden of proof to establish by clear and convincing evidence that consent was voluntary. *State v. Flores*, 2008-NMCA-074, ¶ 13, 144 N.M. 217, 185 P.3d 1067.

**{5}** The district court granted Defendant's motion to suppress the evidence of his blood-alcohol test results, expressing concern that shortly before the blood draw, Defendant was drifting in and out of consciousness and was required by medical personnel to be admitted to the hospital for at least ten hours due to his high level of intoxication. The court also expressed "concerns with the detail of [the] officers' conversation with the Defendant." The district court concluded, based on these concerns, it "cannot determine whether Defendant's consent was voluntary in nature[,]" and it would have preferred a signed waiver indicating voluntary consent.

**{6}** The State attacks the district court's order on several fronts, dissecting its ruling and contending each basis—Defendant's intoxication, the lack of written waiver, the deputy's vague statements surrounding Defendant's consent—is insufficient for suppression. We routinely reject such a "divide-and-conquer" view of each individual factor, however, when applying a test that assesses the totality of the circumstances. *See State v. Olson*, 2012-NMSC-035, ¶ 13, 285 P.3d 1066; *see also State v. Martinez*, 2018-NMSC-007, ¶ 12, 410 P.3d 186 ("On appeal, we must review the totality of the circumstances and must avoid reweighing individual factors in isolation."). The State also premises much of its argument on characterizing the district court's ruling as having concluded that Defendant was too intoxicated to give voluntary consent. The State asserts that nothing in New Mexico jurisprudence suggests that being too heavily intoxicated invalidates consent or that a written waiver is necessary for consent.

**{7}** We are not persuaded by the State's characterization of the ruling below. Defendant's high level of intoxication is neither determinative nor irrelevant; it was but one factor the district court considered, as was the absence of a written waiver and the statements made to procure Defendant's consent. *See State v. Pierce*, 2003-NMCA-117, ¶ 20, 134 N.M. 388, 77 P.3d 292 (stating that in considering the voluntariness of consent, factors considered include "the individual characteristics of the defendant, the circumstances of the detention, and the manner in which the police requested consent"). Having examined the full record, we construe the district court's ruling to conclude that the State did not satisfy its burden of showing valid consent to the blood draw, based on the totality of the circumstances and in light of the presumption against the waiver of constitutional rights. *Cf. Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 25, 146 N.M. 473, 212 P.3d 361 ("Unless clearly erroneous or deficient, findings of the trial court will be construed so as to uphold a judgment rather than to reverse it." (internal quotation marks and citation omitted)); *see, e.g.*, *Flores*, 1996-NMCA-059, ¶ 20 (setting forth the test for valid consent to a search).

**{8}** The district court based its ruling on the following evidence elicited at the suppression hearing. Deputy Jimerson found Defendant slumped over and drooling on himself in his vehicle that was pulled over on the shoulder of the road. During the encounter, Defendant was drifting in and out of consciousness, slurring his speech, and not making sense. Defendant was not responding to basic questions in English, so Deputy España approached Defendant and asked Defendant for his license in Spanish. Defendant handed Deputy España his entire wallet. Concerned for Defendant's medical safety, Deputy Jimerson called an ambulance instead of attempting to have Defendant perform field sobriety tests. Defendant was not alert with the medics tending to him and kept falling asleep as they attempted to conduct tests on him. Defendant was unable to walk, so the medics assisted him into the ambulance and transported him to the hospital.

**{9}** About twenty minutes later, Deputy Jimerson was at Defendant's bedside in the emergency room and performed the horizontal gaze nystagmus test on him. Observing clues of intoxication, Deputy Jimerson asked Deputy España to read the implied

consent advisory to Defendant in Spanish. Deputy España read the following from his implied consent advisory pocket card:

> Listen to me, I am about to tell you something important. You are under arrest for driving under the influence of alcohol or drugs. The New Mexico Implied Consent Act *requires* you to submit to a breath test, a blood test, or both to determine the alcohol or drug content of your blood. After you take our test, you have the right to choose an additional test.

The deputy proceeded to explain who may conduct the additional test and at whose cost, and concluded by asking, "Do you agree to take our test?"

**{10}** Deputy España testified that Defendant kept interrupting his recitation of the advisory to assert that he was not the driver. When the deputy asked in the final question if Defendant agreed to take the test, Defendant responded that there was a female driving, not him. Relative to Defendant's consent, Deputy España offered only the following testimony: "I then asked if . . . we were not concerned about the facts that he thought were important, [sic] I was only asking if he was willing to take the test. At that time, he said yes." Deputy España did not explain to Defendant what was meant in the advisory that the law *required* him to submit to a blood test. In response to the district court's question about obtaining written consent to the blood draw from Defendant, Deputy España replied that the Spanish translation of the pocket advisory card did not include a signature block.

**{11}** With the assistance of Deputy Jimerson, hospital staff administered the blood draw, the results of which showed that Defendant had a .41 blood alcohol content. Medical staff at the hospital informed the officers that Defendant's level of intoxication was so high that he would need to be admitted to the hospital and remain there for at least ten hours. When asked by the district court whether the deputies had handled other DWI cases involving a blood alcohol content of .41, Deputy Jimerson testified that he had not, and Deputy España responded, "not very many."

**{12}** In its appellate briefs, the State complains the district court failed to explain why it rejected the officers' testimony suggesting Defendant understood and expressly consented to the blood draw. The State refers us to the officers' testimony that Defendant seemed to understand Deputy España and was responsive and more alert at the hospital, than at the scene, and that the difference in his demeanor was like night and day. The State contends the officers' testimony was uncontradicted and should have been given greater weight. We are not persuaded that the testimony was uncontradicted, and it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (holding that "[w]e defer to the district court when it weighs the credibility of witnesses and resolves conflicts in witness testimony). As set forth above, the district court also heard testimony that only around twenty to thirty minutes earlier, Defendant was in and out of consciousness, drooling on himself, unable to walk, handed over his wallet to law enforcement in response to its

request for his license, and was not making sense. The district court drew additional inferences about the severity of Defendant's condition from the medical professionals' opinion that Defendant had to be admitted to the hospital and remain there for at least ten hours due to his high level of intoxication, the likes of which the officers had either never or rarely encountered. *See Martinez*, 2018-NMSC-007, ¶ 15 (recognizing that fact-finding requires the selection of which inferences to draw and that just because "another district court could have drawn different inferences on the same facts does not mean this district court's findings were not supported by substantial evidence" (internal quotation marks and citation omitted)). The district court was free to weigh the officers' testimony against conflicting evidence and conclude that it was unpersuaded by the officers' view of Defendant's awareness. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (concluding that the fact-finder is free to reject a party's version of the facts).

**{13}** The State further asserts the deputies' testimony shows Defendant's consent was not the product of duress, coercion, or any other vitiating factors. It points out that Defendant was not read the portion of the Implied Consent Act that explains the criminal punishment for denying consent. Deputy España, however, told Defendant the law *required* him to submit to a blood test and only offered Defendant the right to choose to take a different, additional test, providing no further explanation. Deputy España did not ask whether Defendant understood, after Defendant had interrupted the implied consent advisory on multiple occasions, and he gave confusing testimony as to how he addressed Defendant's concern about the need to test him and he offered no detail about Defendant's consent beyond Defendant's response of "yes." Although no specific aspect of this encounter or the testimony describing it may reflect unlawfulness or clearly coercive tactics, together, however, they are relevant to whether the State established the voluntariness of Defendant's consent. *See Pierce*, 2003-NMCA-117, ¶ 20 (stating that in considering the voluntariness of consent, factors considered include "the individual characteristics of the defendant, the circumstances of the detention, and the manner in which the police requested consent").

**{14}** In light of Defendant's severely compromised state, the deputy's unclear statements to Defendant about the blood draw, and the absence of any clarifying information, the district court could reasonably conclude that Defendant was not sufficiently aware that the deputy actually was requesting his consent in a manner that resulted in a voluntary waiver of a right. *See id.* This, combined with the lack of detail and clarity in the testimony relative to Defendant's agreement to submit to the test and the absence of a written waiver, could reasonably lead the district court to conclude that the State did not establish by clear and convincing evidence the unequivocal and specific consent required. *See id.* (explaining "there must be clear and positive testimony that the consent was specific and unequivocal[,]" without duress and coercion, considering the totality of circumstances, which are viewed with a presumption disfavoring a waiver of constitutional rights); *see also Martinez*, 2018-NMSC-007, ¶ 15 ("An appellate court must indulge in all reasonable inferences in support of the district court's decision and disregard all inferences or evidence to the contrary." (alteration, internal quotation marks, and citation omitted)). We see no error.

**{15}** Lastly, in their reply brief, the State asks us to reverse the district court's ruling pursuant to the inevitable discovery doctrine because Deputy España's testimony established that he could have requested a search warrant, but did not do so because Defendant consented. We do not consider this claim because it was raised for the first time in the reply brief and was not preserved below. *See State v. Andazola*, 2003-NMCA-146, ¶ 26, 134 N.M. 710, 82 P.3d 77 (refusing to consider a defendant's claim on grounds that "[t]he New Mexico Rules of Appellate Procedure do not permit a new argument to be advanced in the reply brief") (citing Rule 12-213(C) NMRA (2003), recompiled and amended as Rule 12-318(C) NMRA); *see also* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *State v. Paiz*, 2011-NMSC-008, ¶ 33, 149 N.M. 412, 249 P.3d 1235 ("On appeal we only consider issues raised in the trial court unless the issues involve matters of jurisdictional or fundamental error.").

## CONCLUSION

**{16}** Based on the foregoing analysis, we hold the State has not established that the district court erred by granting Defendant's motion to suppress. We affirm.

**{17}  IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JACQUELINE R. MEDINA, Judge**