**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2021-NMSC-030**

**Filing Date: September 13, 2021**

**No. S-1-SC-36638**

**STATE OF NEW MEXICO**

      Plaintiff-Respondent,

v.

**JOHN FARISH,**

      Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Christina P. Argyres, District Judge**

Released for Publication December 14, 2021.

Bennett J. Baur, Chief Public Defender
Steven James Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Petitioner

Hector H. Balderas, Attorney General
John Kloss, Assistant Attorney General
Santa Fe, NM

for Respondent

**OPINION**

**BACON, Justice.**

**{1}**    This case reminds us that not all vehicles on New Mexico's roads and highways are in perfect condition. Specifically, this case asks whether a tail lamp with multiple bulbs violates NMSA 1978, Section 66-3-901 (1985, amended 2018)[1] when one bulb in a tail lamp is not illuminated but the tail lamp otherwise complies with the Motor Vehicle Code. The Court of Appeals majority held that such a tail lamp does violate Section 66-

---

[1]When discussing or citing Section 66-3-901, we refer to the 1985 version of the statute because the violation at issue in this case occurred before the 2018 amendment. The 2018 amendment did not affect the language of the statute that is relevant in our analysis here.

3-901, reasoning that if each bulb in a tail lamp is not fully operational, then the tail lamp is not "in good working order and adjustment" as Section 66-3-901 requires. *See State v. Farish*, 2018-NMCA-003, ¶¶ 17-19, 410 P.3d 239. We disagree.

**{2}** Instead, we hold that tail lamps do not violate Section 66-3-901 when the tail lamps comply with the specific statutory equipment requirements set out in NMSA 1978, Sections 66-3-801 to -888[2] (1953, as amended through 2019). In reaching our conclusion, we examine the plain language of Section 66-3-901, including the meaning of "good working order," considered in light of the Motor Vehicle Code's purpose to promote public safety before applying the general/specific law of statutory construction to interpret Section 66-3-901 as it relates to other specific statutory requirements for motor vehicle equipment.

## I. BACKGROUND

**{3}** Bernalillo County Sheriff's Deputy Peter Martinez stopped Defendant John Farish in April 2012 on the basis that Defendant's tail lamp was defective. Deputy Martinez testified that, at the time of the stop, Defendant's right tail lamp was "working properly" but the large upper bulb in the left tail lamp was not illuminated. Deputy Martinez charged Defendant with operating a vehicle with defective equipment under Section 66-3-801(A) (1991)[3] and driving under the influence (first offense) contrary to NMSA 1978, Section 66-8-102 (2004, amended 2016). Defendant was convicted of both charges in metropolitan court, and on appeal, both the district court and the Court of Appeals affirmed the convictions. *See Farish*, 2018-NMCA-003, ¶ 1.

**{4}** At each level of these proceedings, Defendant has argued that Deputy Martinez did not have reasonable suspicion to stop him because the facts and circumstances of this case do not support a conclusion that he was breaking the law or had broken the law at the time he was stopped, rendering the stop unconstitutional and the resulting evidence inadmissible. *See State v. Neal*, 2007-NMSC-043, ¶¶ 18, 21, 142 N.M. 176, 164 P.3d 57 (holding that reasonable suspicion requires "particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law"); *State v. Santiago*, 2010-NMSC-018, ¶ 10, 148 N.M. 144, 231 P.3d 600 (noting that the federal and state constitutions generally require suppression of unconstitutionally obtained evidence).

**{5}** Following a bench trial, the metropolitan court rejected Defendant's argument and determined that Defendant violated Section 66-3-801 without referencing another specific section of the Motor Vehicle Code or finding that the vehicle was unsafe. The

---

2While the Court of Appeals opinion and the petition for writ of certiorari addressed whether tail lamps must comply with the requirements set out in Sections 66-3-801 through -887, our consideration here encompasses Section 66-3-888 (Airbag violations). Section 66-3-901 mandates that equipment must be "in good working order and adjustment as required by the Motor Vehicle Code." As the last section in Chapter 66, Article 3, Part 9 (Equipment), Section 66-3-888 is part of the Motor Vehicle Code, and thus we include it in our analysis for completeness.

3When discussing and citing Section 66-3-801, we refer to the 1991 version of the statute. We note that the 2018 amendment to Section 66-3-801 did not change the language relevant in this case.

district court rejected the metropolitan court's reasoning, concluding that a per se violation of Section 66-3-801(A) for defective tail lamps requires a reference to Section 66-3-805 (1978),[4] which sets out the number, location, color, and visibility requirements for tail lamps. After considering Deputy Martinez's testimony, the district court determined that Section 66-3-805(A) did not provide a basis for a reasonable suspicion because Deputy Martinez was always within five hundred feet of Defendant's vehicle, the distance from which a tail lamp must be visible. Section 66-3-805(A). Instead, the district court concluded that Deputy Martinez had a "reasonable suspicion [for the stop] on another basis" under Section 66-3-805(C).

**{6}** In a split decision, the Court of Appeals disagreed with the district court and held that Defendant did not violate Section 66-3-805(C) because there was insufficient evidence that the tail lamps did not comply with the requirements of Section 66-3-805, *see Farish*, 2018-NMCA-003, ¶¶ 9, 11, and further held that Defendant did not violate Section 66-3-801 because there was no evidence that the condition of the vehicle was unsafe, *see Farish*, 2018-NMCA-003, ¶ 19. Nevertheless, the Court of Appeals majority concluded that Defendant violated Section 66-3-901, determining that Section 66-3-901 imposes independent operational and safety requirements beyond those of Section 66-3-801 and Section 66-3-805. *Farish*, 2018-NMCA-003, ¶ 18. Section 66-3-901 states,

> No person shall drive or move on any highway any motor vehicle, trailer, semitrailer or pole trailer or any combination thereof unless the equipment upon every vehicle is in good working order and adjustment as required in the Motor Vehicle Code and the vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway.

**{7}** The Court of Appeals majority, quoting the record, concluded that because the tail lamp was "'not working properly'" and "'was not working at 100 percent'" and was "'not working perfectly,'" it "was not in good working order," giving Deputy Martinez reasonable suspicion of a violation to support stopping Defendant under Section 66-3-901. *Farish*, 2018-NMCA-003, ¶¶ 18-19 (brackets omitted). The majority concluded that "[a tail lamp] bulb being burned out means that not all equipment on Defendant's vehicle was in working order, let alone *good* working order as required by Section 66-3-901." *Farish*, 2018-NMCA-003, ¶ 19.

**{8}** The Court of Appeals dissent disagreed, concluding that Section 66-3-901 does "not establish an independent criminal basis for vehicle lighting violations under the Motor Vehicle Code" because Section 66-3-901 is a general statute in conflict with Section 66-3-805 that specifically deals with tail lamps. *Farish*, 2018-NMCA-003, ¶¶ 27-28 (Garcia, J., dissenting) ("Here, the two statutes are factually in conflict because a vehicle with a [tail lamp] bulb that is not 'in good working order' in violation of Section 66-3-901 can still emit sufficient lighting from other bulbs to be 'plainly visible from a distance of five hundred feet to the rear' pursuant to Section 66-3-805(A)."); *see also* NMSA 1978, § 12-2A-10(A) (1997) (Irreconcilable statutes or rules). To resolve the

---

[4]When discussing and citing Section 66-3-805, we refer to the 1978 version of the statute.

conflict, the dissent applied the general/specific rule of statutory construction to determine that "the more specific statutory provisions [of Section 66-3-805] would take precedence over the general statute [Section 66-3-901] so that the two statutes will be harmonized and each is given effect." *Farish*, 2018-NMCA-003, ¶ 28 (Garcia, J., dissenting). The dissent noted that the majority's construction "violates the general/specific rule of statutory construction and effectively makes Section 66-3-805(A) irrelevant and incapable of harmonization with Section 66-3-901 in this case." *Farish*, 2018-NMCA-003, ¶ 29 (Garcia, J., dissenting).

{9}     Defendant petitioned this Court for certiorari on a narrow question: "Can a person violate [Section] 66-3-901 . . . for having tail [lamps] that comply with the specific requirements set out in [Sections] 66-3-801 to -887?" Defendant argues that the answer is no. Specifically, Defendant argues that Section 66-3-901 "is not violated when the tail [lamp] fulfills the requirements found in the more specific section of the Motor Vehicle Code, [§] 66-3-805(A) (requiring tail [lamps] to be visible from 500 feet)." Defendant argues that his tail lamps were in "'good' working order" as required by Section 66-3-901 because they were functioning according to their nature and purpose by emitting a red light visible from five hundred feet, as required by Section 66-3-805(A).

{10}     The State contends that the Court of Appeals majority is correct. The State argues that Deputy Martinez had a reasonable suspicion to stop Defendant under each statute proposed by the courts below——Section 66-3-801, Section 66-3-805(A) and (C), and Section 66-3-901——as well as Section 66-8-102 (2004) (prohibiting driving under the influence). Alternatively, the State urges this Court to apply the right for any reason doctrine to excuse any reasonable mistake of law Deputy Martinez may have made. However, the question before us is not whether Deputy Martinez had any reasonable suspicion to stop Defendant or whether, as the State contends, Deputy Martinez made a reasonable mistake of law under *Heien v. North Carolina*, 574 U.S. 54, 57 (2014) (holding that a mistake of law can support a reasonable suspicion for a constitutional stop). Rather, Defendant's issue on appeal is limited to the question of statutory interpretation as to the meaning and application of Section 66-3-901 as it relates to the more specific provisions in the Motor Vehicle Code.

## II.     DISCUSSION

## A.     Standard of Review

{11}     We review issues of statutory construction de novo. *State v. McClendon*, 2001-NMSC-023, ¶ 2, 130 N.M. 551, 28 P.3d 1092. "When this Court construes statutes, our guiding principle is that we should determine and effectuate the Legislature's intent when it enacted the statute." *State ex rel. Brandenburg v. Sanchez*, 2014-NMSC-022, ¶ 4, 329 P.3d 654. We first look to the plain meaning of the statutory language. *State v. Smith*, 2004-NMSC-032, ¶ 9, 136 N.M. 372, 98 P.3d 1022. If "the language is doubtful [or] ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction," then the Court will construe the statute in accordance with "its obvious spirit or reason." *State v. Tafoya*, 2010-NMSC-019, ¶ 10, 148 N.M. 391, 237 P.3d 693 (internal quotation marks and citation omitted). Additionally, "we read the

provisions at issue 'in the context of the statute as a whole,' including its purposes and consequences." *Lujan Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545 (citation omitted). The Legislature "is presumed not to have used any surplus words in a statute; each word must be given meaning. This Court must interpret a statute so as to avoid rendering the Legislature's language superfluous." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 24, 309 P.3d 1047 (internal quotation marks and citation omitted).

## B.    Meaning of "Good Working Order" in Section 66-3-901

**{12}**    As we consider the general scope of Section 66-3-901 compared to the specific requirements described in other sections of the Motor Vehicle Code, we are compelled to consider the meaning of "good working order" to determine whether the Legislature intended Section 66-3-901 to impose a criminal violation independent of those violations resulting from a person's failure to comply with statutes imposing specific requirements for the condition of the vehicle and its equipment such as Section 66-3-801 and Section 66-3-805. *See Smith*, 2004-NMSC-032, ¶¶ 9-10. The plain meaning of statutory language is informed by dictionary definitions. *State v. Segotta*, 1983-NMSC-092, ¶ 8, 100 N.M. 498, 672 P.2d 1129 ("We, as other courts, often make reference to dictionaries and to the case law to determine the probable legislative intent . . . ." (internal quotation marks and citation omitted)).

**{13}**    "Working order" is defined as "a condition of a machine in which it functions according to its nature and purpose." *Webster's Third New Int'l Dictionary* 2635 (1993). "Good" means "adapted to the end designed or proposed: satisfactory in performance: free from flaws or defects . . . not impaired." *Id.* at 978. "Good working order" is an idiom that means "working properly." *Merriam-Webster.com Dictionary*, "in (good) working order," https://www.merriam-webster.com/dictionary/good%20working%20order?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Aug. 24, 2021). Thus, the plain meaning of "good working order," as provided by dictionary definitions, suggests that Section 66-3-901 requires equipment to satisfactorily function in accordance with its nature and purpose.

**{14}**    We are not the first court to construe "good working order." In *State v. Brown*, law enforcement stopped a defendant solely because one out of the four bulbs forming the defendant's left rear light panel, which included the tail lamp, was not illuminated. 2014 WI 69, ¶¶ 9, 18, 28-29, 38, 850 N.W.2d 66, *overruled on other grounds by State v. Houghton*, 2015 WI 79, ¶¶ 48-52, 868 N.W.2d 143. In determining whether law enforcement had probable cause or reasonable suspicion for the stop, the Wisconsin Supreme Court directly addressed the meaning of "good working order" to consider whether the defendant's tail lamp complied with the requirements of the statute. *Id.* ¶¶ 17, 26-29, 38.

**{15}**    The Wisconsin Supreme Court held, based on dictionary definitions, that "'good working order' means suitable or functioning for the intended use." *Id.* ¶¶ 28-29. The Wisconsin Supreme Court focused on function to determine whether a tail lamp is in good working order, noting that its approach aligned with other jurisdictions. *Id.* ¶ 32

(citing *Kroft v. State*, 992 N.E.2d 818, 822 (Ind. Ct. App. 2013), then citing *Vicknair v. State*, 751 S.W.2d 180, 189-90 (Tex. Crim. App. 1988)); *see Spurlin v. Nardo*, 114 S.E.2d 913, 918 (W. Va. 1960) (determining that brakes were not in good working order when they did not adequately control the movement and stopping of a vehicle, as required by the statute setting out standards for braking equipment), *modified on other grounds by Moran v. Atha Trucking, Inc.*, 540 S.E.2d 903, 908-10 (W. Va. 1997). The Wisconsin Supreme Court then determined that a tail lamp's intended use and function are provided by the statutory definition of a tail lamp and by the parameters of the statute governing tail lamp requirements. *Brown*, 2014 WI 69, ¶ 33 (noting that "[t]he statutory definition of 'tail lamp'" describes a tail lamp as a "warning light," and the tail lamp statute requires tail lamps to serve as warning lights "by emitting during hours of darkness a red light plainly visible from a distance of 500 feet to the rear" (internal quotation marks and citation omitted)). "Accordingly, a tail lamp is functioning for its intended use and [is] thus in good working order when . . . it emits a red warning light that is visible to another vehicle traveling 500 feet behind it." *Id.* The Wisconsin Supreme Court concluded that the defendant's tail lamp was in "good working order" because there was no evidence that it did not emit such a light, even when one bulb in the tail lamp was not illuminated. *Id.* ¶¶ 33-34, 38. The Wisconsin Supreme Court rejected the state's argument that the statute required all bulbs in a tail lamp to be lit, concluding that a tail lamp need not be fully operational to be in good working order and that "requiring every single light bulb on the back of a vehicle to be in perfect condition would lead to absurd and unreasonable results." *Id.* ¶¶ 34-35.

**{16}** We too conclude that the plain meaning of "'good working order' means suitable or functioning for the intended use." *See id.* ¶ 29. Under the more exacting requirement that equipment must be "free from flaws or defects" and "not impaired," *see* "good," *Webster's*, *supra* at 978, to be in "good working order" under Section 66-3-901 would impose an absurd standard for vehicles on New Mexico roads and highways because it would require that equipment be in perfect condition, beyond a more reasonable expectation that equipment functions for its intended use. *See Brown*, 2014 WI 69, ¶ 29.

**{17}** Interpreting "good working order" to mean that equipment on a vehicle is functioning for its intended use supports the public safety interests that are among the stated purposes of and are prevalent throughout the Motor Vehicle Code. *See State v. Saiz*, 2001-NMCA-035, ¶ 6, 130 N.M. 333, 24 P.3d 365 (quoting the statutory requirement that mopeds "'comply with those motor vehicle safety standards deemed necessary and prescribed by the director of motor vehicles'" under NMSA 1978, § 66-3-1101 (1981)); *State v. Richardson*, 1992-NMCA-041, ¶ 9, 113 N.M. 740, 832 P.2d 801 (noting provisions in the Motor Vehicle Code governing safety that relate to tractors); *see also Wright v. Moore*, 931 A.2d 405, 408 (Del. 2007) ("The motor vehicle statutes, without doubt, are enacted for the safety of the traveling public."); *Commonwealth v. Church*, 522 A.2d 30, 35 (Pa. 1987) ("[T]he primary purpose of the Motor Vehicle Code and its amendment is to protect the public safety . . . ."). The Legislature's intent to prioritize safety is apparent in the plain language throughout Article 3 of the Motor Vehicle Code and informs our interpretation of its provisions. *See, e.g.*, NMSA 1978, § 66-3-7(B) (2004) (allowing the Motor Vehicle Division to refuse to register a vehicle that is "mechanically unfit or unsafe to be operated or moved upon the highways" when

registration is required for nearly all vehicles on state highways by NMSA 1978, Section 66-3-1(A), (B) (2007, amended 2018)); § 66-3-801(A) (prohibiting vehicles "in such unsafe condition as to endanger any person" on New Mexico highways in addition to requiring that equipment is "in proper condition and adjustment"); § 66-3-901 (requiring vehicles to be "in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway"). By prescribing specific operating requirements for motor vehicle equipment directly related to the safe functioning of a vehicle, such as lights, brakes, windshields, and tires, but not for equipment that has little to no bearing on safety, such as air conditioners or car radios, the Legislature sets out what it deems necessary to render a vehicle safe, but does not in these sections require that it work "at 100 percent" or "perfectly" as the Court of Appeals concluded. *See* §§ 66-3-802 to -888; *see also Farish*, 2018-NMCA-003, ¶¶ 18-19.

**{18}** Accordingly, "good working order" does not require equipment to function one hundred percent perfectly if it is suitable or functioning for its intended use. We reverse the Court of Appeals opinion to the extent that it requires "all equipment" in New Mexico vehicles to be working perfectly for it to be in "*good* working order" under Section 66-3-901. *See Farish*, 2018-NMCA-003, ¶ 19.

## 1.    General/specific rule of statutory construction

**{19}** Having determined the meaning of "good working order" as it is used in Section 66-3-901, we now consider the applicability of Section 66-3-901 to those circumstances when the Legislature has provided guidance related to the functioning of specific motor vehicle equipment, as it has done in Section 66-3-801 and 66-3-805. In this case, this statutory scheme appears to give rise to a conflict between Section 66-3-901, which generally requires equipment to be "in good working order and adjustment," and Section 66-3-805, which describes specific requirements for tail lamps.

**{20}** The Court of Appeals majority held that "Section 66-3-901 . . . impose[d] an additional requirement . . . above and beyond those specifically provided for in Sections 66-3-801 to -887." *Farish*, 2018-NMCA-003, ¶ 18. By concluding that Section 66-3-901 and Sections 66-3-801 to -887 "reflect different purposes, do not overlap, operate independently from one another, and neither conflict with nor render a nullity the requirements of the other," the majority declined to apply the general/specific rule of statutory construction. *Farish*, 2018-NMCA-003, ¶ 18. Meanwhile, the dissent recognized that "[t]he critical language in Section 66-3-901 is very general and broadly worded" while "numerous vehicle equipment provisions set forth in the Motor Vehicle Code . . . address the specific conditions and functionality of various equipment on a vehicle." *Farish*, 2018-NMCA-003, ¶ 27 (Garcia, J., dissenting).

**{21}** "If statutes appear to conflict, they must be construed, if possible, to give effect to each . . . . However, an earlier-enacted specific, special or local statute prevails over a later-enacted general statute unless the context of the later enacted statute indicates otherwise." § 12-2A-10(A). "The general/specific statute rule is [just one] tool in statutory construction" with "[t]he primary goal . . . to determine legislative intent in the context of potentially conflicting laws." *State v. Santillanes*, 2001-NMSC-018, ¶¶ 7, 11, 130 N.M.

464, 27 P.3d 456. This rule "should be applied in a flexible manner and should be used in conjunction with other rules of statutory interpretation in order to achieve the ultimate goal of discerning the intent of the Legislature." *Id.* ¶ 21. Our goal is "to determine whether the Legislature intends to punish particular criminal conduct under a specific statute instead of a general statute." *Id.* ¶ 11. "In ascertaining legislative intent, courts should balance the rule of lenity, which favors applying the general/specific statute rule in cases of ambiguity, with the judiciary's longstanding deference to prosecutorial discretion, which favors the exercise of caution before applying the general/specific statute rule." *State v. Cleve*, 1999-NMSC-017, ¶ 26, 127 N.M. 240, 980 P.2d 23.

**{22}** The general/specific rule of statutory construction applies to conflicting statutes dealing with the same subject matter. *Id.* ¶ 17. We apply the general/specific rule because we presume that the Legislature did not intend "a conflict between two of its statutes and because the Legislature's attention is more particularly directed to the relevant subject matter in deliberating upon the special law." *Id.* "[T]he more specific statute will prevail over the more general statute" because we treat the specific statute as an exception to the general statute when there is no "clear expression of legislative intent to the contrary." *Santillanes*, 2001-NMSC-018, ¶ 7.

**{23}** To determine whether the general/specific rule applies to criminal statutes, we first analyze the two statutes to "ascertain[] whether the Legislature intended to create multiple punishments for the two relevant crimes." *Id.* ¶ 13. If we determine "that the Legislature did not intend to create separately punishable offenses for the same conduct, then we proceed to the narrower question of whether the Legislature intended to limit the charging discretion of the prosecutor." *Id.* ¶ 16. For both analyses, we "compar[e] the elements of the crimes and, if necessary, resort[] to other indicia of legislative intent." *Id.* ¶ 11. When comparing the elements of the crimes, "we assess whether each provision required proof of an additional fact that the other does not in accordance with the test established in *Blockburger v. United States*, 284 U.S. 299, 303-04 . . . (1932)." *Santillanes*, 2001-NMSC-018, ¶ 16 (internal quotation marks omitted).

**{24}** "If the elements of the two crimes are the same, the general/specific statute rule applies, and the prosecution must charge the defendant under the special law absent a clear expression of legislative intent to the contrary." *Id.* (quoting *Cleve*, 1999-NMSC-017, ¶ 26 (internal quotation marks omitted)). That the two crimes represent an identity in elements "demonstrates that the Legislature did not intend to punish separately under the two statutes for the same conduct and intended to limit prosecutorial discretion, absent evidence of a contrary legislative intent." *Id.*; *see State v. Blevins*, 1936-NMSC-052, ¶ 7, 40 N.M. 367, 60 P.2d 208 ("It is a fundamental rule that where the general statute, if standing alone, would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute, whether it was passed before or after such general enactment."). "If the elements differ, however, there is a presumption that the Legislature intended to create separately punishable offenses and, concomitantly, intended to leave prosecutorial charging discretion intact; further inquiry is then necessary to determine whether the presumption stands." *Santillanes*, 2001-NMSC-018, ¶ 16 (citing *Cleve*, 1999-NMSC-017, ¶ 27).

**{25}** While Defendant presents the issue more broadly, it is only necessary for us to consider whether a person can violate Section 66-3-901 when the person's tail lamps comply with Section 66-3-805(A), which provides the specific criteria applicable to the violation charged in this case. *See Farish*, 2018-NMCA-003, ¶¶ 27-28 (Garcia, J., dissenting). Because Section 66-3-901 requires that "the equipment upon every vehicle is in good working order and adjustment *as required in the Motor Vehicle Code*," Section 66-3-901 cannot be divorced from Section 66-3-805(A), which prescribes statutory requirements for tail lamps. (Emphasis added.) In this instance, Section 66-3-805(A) provides the applicable intended use and function of a tail lamp: "emit a red light plainly visible from a distance of five hundred feet to the rear," informing a determination of whether the tail lamp in question is in "good working order" according to Section 66-3-901. Because Section 66-3-901 incorporates the provisions of Section 66-3-805 by its reference to the requirements of the Motor Vehicle Code, the two statutes, as they apply to tail lamps, are an identity in elements. To conclude otherwise would render the specific requirements of Section 66-3-805 superfluous. *See Baker*, 2013-NMSC-043, ¶ 24.

**{26}** Furthermore, there is no evidence the Legislature intended to create an independent basis for a criminal violation under Section 66-3-901 separate from the requirements of Section 66-3-805(A), especially in light of the fact that the Legislature amended the equipment sections in the Motor Vehicle Code as recently as 2019. We note too that Section 66-3-901(B) and Section 66-3-805(D)——like many other recently amended sections in the Motor Vehicle Code——impose the identical consequence on violators of each of these "penalty assessment misdemeanor[s]." *See e.g.*, §§ 66-3-801 to -802, -804 to -806; *see* NMSA 1978, § 66-8-116 (2019) (listing penalty assessment misdemeanors and the associated monetary penalties, including those for various "[i]mproper equipment" violations). Absent evidence of intent to punish under both statutes, a person cannot violate Section 66-3-901 for having tail lamps that comply with the specific requirements set out in the Motor Vehicle Code, which in this case are provided by Section 66-3-805(A). *See Santillanes*, 2001-NMSC-018, ¶ 16.

**{27}** Notwithstanding our conclusion here, it is possible that equipment may still violate Section 66-3-901 when the Motor Vehicle Code does not set out specific requirements for equipment. Where a specific statute in the Motor Vehicle Code does not prescribe requirements defining equipment's intended use or function, then the public safety purpose of Section 66-3-901 still requires that the equipment be in good working order to the extent that the equipment satisfactorily functions for its intended use and in a manner that is not unsafe and does not render the vehicle unsafe.

## 2. Acceptable redundancy

**{28}** We recognize that the application of the general/specific rule of statutory construction creates some redundancy with the Court of Appeals interpretation of Section 66-3-801(A) set out in *State v. Munoz*, 1998-NMCA-140, 125 N.M. 765, 965 P.2d 349, and clarified by the Court of Appeals for this case. *See Farish*, 2018-NMCA-003, ¶ 13 (discussing how Section 66-3-801(A) establishes both per se violations with "references to the equipment requirements of Sections 66-3-801 to -887" and

independent violations when a vehicle is in an unsafe condition). This redundancy, however, is acceptable. This Court will give meaning to two statutes that relate to the same purpose, in this case safety, but are meaningfully distinct, even when the statutes create some redundancy. *Noice v. BNSF Ry. Co.*, 2016-NMSC-032, ¶¶ 22, 37, 383 P.3d 761 (holding that a plaintiff's claim under the Federal Employee's Liability Act was not precluded by the Federal Railroad Safety Act because the statutes were "complementary in purpose and effect" and "further[ed] railroad safety in meaningfully distinct ways"). It is "hardly unusual" that "redundancies across statutes manifest." *Id.* ¶ 12. "[C]ourts are not at liberty to pick and choose among congressional enactments . . . when two statutes are capable of co-existence." *Id.* (alteration in original). It is our duty as a court to regard each of two such statutes as effective, unless there is a clear legislative intent to the contrary. *See id.*

**{29}** Section 66-3-801 and Section 66-3-901 both relate to the safety of equipment and vehicles on New Mexico roads and highways in meaningfully distinct ways. Section 66-3-901 implicates vehicles with equipment that is not "in good working order and adjustment as required in the Motor Vehicle Code." Section 66-3-801(A) implicates vehicles with equipment that does not meet the specifications "required by Sections 66-3-801 through 66-3-887."[5] Section 66-3-801(A) also prohibits people from "do[ing] any act forbidden or fail[ing] to perform any act required" by Sections 66-3-801 to -887. While each relates to safety, the statutes are meaningfully distinct and capable of coexistence. As there is no clear legislative intent to the contrary, we thus accept the redundancy. *See Noice*, 2016-NMSC-032, ¶ 12.

## III.    CONCLUSION

**{30}** The relationship between Section 66-3-901 and the other sections of the Motor Vehicle Code shows that the Legislature intended Section 66-3-901 to be a catch-all statute that maintains and enhances public safety by filling gaps in the Motor Vehicle Code. Section 66-3-901 achieves this purpose by ensuring that equipment and vehicles on New Mexico highways are in a safe condition, in part by requiring that equipment is in good working order and adjustment.

**{31}** We reject the Court of Appeals majority's determination that Section 66-3-901 establishes an independent basis for a violation of the Motor Vehicle Code when a specific statute prescribes requirements for equipment. We conclude that a person cannot violate Section 66-3-901 for having tail lamps that comply with the specific requirements for tail lamps set out in Sections 66-3-801 to -888. The Court of Appeals majority clearly held that there is no sufficient evidence supporting convictions under Section 66-3-801 or Section 66-3-805. Thus, we remand this matter to the district court for disposition in accordance with the interpretation of Section 66-3-901 described herein.

**{32}    IT IS SO ORDERED.**

---

[5]The quoted text of the 1991 amendment of Section 66-3-801(A) predates the Legislature's 2015 enactment of Section 66-3-888. The 2018 amendment of Section 66-3-801(A) includes identical text.

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Justice**

**JULIE J. VARGAS, Justice**

**GERALD E. BACA, Judge**
**Sitting by designation**